UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JAMPA GONPO, | ) | |
| on behalf of himself | ) | |
| and others similarly situated, | ) | |
| Plaintiff, | ) | Civil Action No. 3:16-cv-40138-MGM |
| | ) | |
| v. | ) | |
| | ) | |
| SONAM'S STONEWALLS & ART, LLC, | ) | |
| d/b/a Sonam's Stonewalls & Art, and | ) | |
| SONAM RINCHEN LAMA, | ) | |
| | ) | |
| Defendants. | ) | |

REPORT & RECOMMENDATION REGARDING DEFENDANTS' MOTIONS TO DISMISS,
PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION, AND PLAINTIFFS'
MOTION FOR EQUITABLE TOLLING
(Dkt. Nos. 22, 34, 45, 47, 49 & 62)

ROBERTSON, U.S.M.J.

This is a putative collective and class action for backpay and liquidated damages. The

plaintiffs, former employees of defendant Sonam's Stonewalls & Art, LLC, d/b/a Sonam's

Stonewalls & Art ("Sonam's"), allege that Sonam's and its owner-operator, defendant Sonam

Rinchen Lama ("Lama") (collectively, "Defendants"), knowingly and willfully failed to pay

them for all of the hours they worked and failed to pay them overtime wages for the hours they

worked in excess of forty hours per week. The original complaint brought by plaintiff Jampa

Gonpo ("Gonpo") asserts claims under federal law for violation of the Fair Labor Standards Act

("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and the Internal Revenue Code ("IRC"), 26 U.S.C. § 7434,

as well as under the Massachusetts Wage Act, Mass. Gen. Laws ch. 149, §§ 148 *et seq.*, and the

Massachusetts Minimum Fair Wage Law, Mass. Gen. Laws ch. 151, §§ 1 *et. seq.* (Dkt. No. 1).

In a first amended complaint filed without leave of court, Gonpo and opt-in plaintiffs Jamyang

Gyatso Phulotsang ("Phulotsang"), NFN Tobden ("Tobden"), and Tulku Dechen ("Dechen")

(collectively, "Plaintiffs") reassert the same claims as those stated in the original complaint and add a number of state common law claims.

Presently before the court are: (1) Plaintiff's Motion for Conditional Certification and for Court Facilitation of Notice Pursuant to 29 U.S.C. § 216(b) (Dkt. No. 22); (2) Defendants' Motion to Dismiss Pursuant to Rule 12(b)(1) (directed at the original complaint) (Dkt. No. 34); (3) Defendants' Motion to Dismiss: Rule 12(b)(1) (directed at the first amended complaint) (Dkt. No. 45); (4) Defendants' Motion to Dismiss Rule 12(b)(6) (directed at the first amended complaint) (Dkt. No. 47); (5) Defendants' Motion to Dismiss re: Improper Addition of Claims and Parties (directed at the first amended complaint) (Dkt. No. 49); and (6) Plaintiffs' Motion for Equitable Tolling (Dkt. No. 62).  For the reasons set forth herein, the court recommends as follows:

(a)  that Defendants' motions to dismiss on jurisdictional grounds pursuant to Fed. R. Civ. P. 12(b)(1) (Dkt. Nos. 34, 45) be denied;

(b)  that Defendants' motion to dismiss based on the improper addition of claims and parties (Dkt. No. 49) be denied;

(c)  that Plaintiffs' filing of the first amended complaint without leave of court be treated as an implicit request for leave to file an amended complaint and that Defendants' motion to dismiss the first amended complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. No. 47) be treated as an opposition on futility grounds;

(d)  that Plaintiffs be denied leave to file an amended complaint setting forth claims under the FLSA on behalf of Phulotsang, Tobden, and Dechen because their claims are time-barred and they have not alleged a factual predicate in their complaint for equitable tolling;

(e)  that Plaintiffs be denied leave to file an amended complaint setting forth claims under

26 U.S.C. § 7434 because Plaintiffs fail to adequately state a claim;

(f)   that Plaintiffs be denied leave to file an amended complaint setting forth pendent state law claims by Phulotsang, Tobden, and Dechen because their state law claims are not so related to Gonpo's FLSA claims that they form part of the same case or controversy as required by 28 U.S.C. § 1367(a), or, to the extent that they are part of the same case or controversy, the court should exercise its discretion to decline supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(2);

(g)  that Gonpo be denied leave to file an amended complaint setting forth a claim for negligent misrepresentation because he fails to adequately state a claim;

(h)  that Gonpo be granted leave to file an amended complaint setting forth FLSA claims, as well as claims under the Massachusetts Wage Act, Mass. Gen. Laws ch. 149, §§ 148 *et seq.*, and the Massachusetts Minimum Fair Wage Law, Mass. Gen. Laws ch. 151, §§ 1 *et. seq.*, and for breach of contract, breach of the implied covenant of good faith and fair dealing, quantum meruit, unjust enrichment, breach of implied contract, and for equitable relief in the form of an accounting;

(i)   that Plaintiff's motion for conditional certification (Dkt. No. 22) be denied; and

(j)   that Plaintiffs' motion for equitable tolling (Dkt. No. 62) be denied.

## I.   BACKGROUND

### A.  Procedural Background

On September 27, 2016, Gonpo filed a putative collective and class action complaint against Defendants for willful violations of the FLSA, IRC, and Massachusetts General Laws (Dkt. No. 1).  Defendants answered the complaint on November 25, 2016 (Dkt. No. 14).  On March 17, 2017, Gonpo filed a motion for conditional certification of a collective action under

the FLSA, which he supported with an affidavit of his own, as well as affidavits of Phulotsang,

Tobden, and Dechen (Dkt. Nos. 22-23).  Shortly thereafter, on March 31, 2017, Gonpo,

Phulotsang, Tobden, and Dechen filed notices of written consent to be party plaintiffs (Dkt. Nos.

24-27).[1]  Defendants filed an opposition to the motion for conditional certification on April 14,

2017, accompanied by an affidavit from Lama, as well as a deposition transcript of Gonpo (Dkt.

No. 31).  Plaintiffs replied on April 28, 2017 (Dkt. No. 32).  On May 8, 2017, Defendants filed a

motion to dismiss the original complaint for lack of jurisdiction pursuant to Fed. R. Civ. P.

12(b)(1) (Dkt. No. 34).  Thereafter, on May 22, 2017, in lieu of opposing the motion to dismiss,

Gonpo, along with opt-in plaintiffs Phulotsang, Tobden, and Dechen filed a first amended

complaint reasserting the same claims and adding a number of state common law causes of

action (Dkt. No. 38).  Plaintiffs did not seek leave of court before filing the first amended

complaint.  On June 19, 2017, Defendants moved to dismiss the first amended complaint on Fed.

R. Civ. P. 12(b)(1) and 12(b)(6) grounds, as well as for the improper addition of claims and

parties (Dkt. Nos. 45-50).  Plaintiffs opposed Defendants' various motions to dismiss on July 3,

2017 (Dkt. Nos. 52-54) and filed a motion for equitable tolling of the statute of limitations on

July 24, 2017 (Dkt. Nos. 62-63).  Plaintiffs filed an additional affidavit from Phulotsang in

support of the motion for equitable tolling (Dkt. No. 70-1).  Defendants opposed the motion for

equitable tolling on July 31, 2017 (Dkt. No. 65), Plaintiffs replied on August 11, 2017 (Dkt. No.

72), and Defendants sur-replied on August 14, 2017 (Dkt. No. 73).

---

[1] The only notice of written consent that is legible is Gonpo's.  However, the signatures
appearing on the other three notices of written consent appear to be those of Phulotsang, Tobden,
and Dechen based on a comparison of those signatures with the signatures appearing on their
affidavits.

## B.  Allegations in the Complaint

Following are the allegations in Gonpo's original complaint.  Sonam's, a domestic business corporation organized under the laws of the State of Massachusetts, is a stonemasonry construction business with a principal address at 265 Greenfield Road, South Deerfield, Massachusetts (Dkt. No. 1, at ¶ 10).  Gonpo alleges on information and belief that Sonam's is a business engaged in interstate commerce that has gross sales in excess of $500,000 per year, and that Sonam's purchased and handled goods that moved in interstate commerce, including flagstone, bluestone, and marble used to design unique stonewalls or structures (*id*. at ¶¶ 11-12).  Sonam's is owned and operated by Lama, a Tibetan master stonemason, who is in charge of all areas of the business, including hiring and firing employees, supervising and controlling employee work schedules and conditions of employment, determining the rate and method of payment, and maintaining employee records (*id*. at ¶¶ 14, 16).

Gonpo is a former employee of Sonam's, who held a non-exempt position as a stonemason/construction worker (*id*. at ¶¶ 9, 21, 29).[2]  Gonpo worked for Sonam's from January 1, 2008 to November 30, 2015, with a promised rate of pay of $14.00 per hour (*id*. at ¶¶ 24, 26).  While Gonpo was employed by Sonam's, he worked a total of around 54.5 hours each week, consisting of between nine and ten hours each weekday and between six and eight hours on Saturdays (*id*. at ¶ 25).  However, Lama consistently paid Gonpo for only sixty hours per month for a total of $840.00 in cash per month (*id*. at ¶ 27).  In addition, Lama failed to pay Gonpo overtime compensation of one-and-one-half times his regular rate of pay for all hours worked over forty in a given workweek (*id*. at ¶ 28).  Gonpo alleges that Defendants failed to keep full

---

[2] The FLSA exempts employees occupying "bona fide executive, administrative, or professional" positions from overtime requirements.  *See* 29 U.S.C. § 213(a)(1).

and accurate records of his hours and wages and that Defendants' failure to pay him at least the hourly minimum wage for each hour worked and failure to pay him his lawfully due overtime compensation of one-and-one-half times his regular rate of pay for all hours worked over forty in a given workweek were knowing and willful (*id*. at ¶¶ 19-20, 22).

### C. Allegations in the First Amended Complaint

Following are the allegations in Plaintiffs' first amended complaint.  Sonam's, a domestic business corporation organized under the laws of the State of Massachusetts, is a stonemasonry construction business with a principal address at 265 Greenfield Road, South Deerfield, Massachusetts (Dkt. No. 38 at ¶ 14).  Plaintiffs allege, on information and belief, that Sonam's is a business engaged in interstate commerce that has gross sales in excess of $500,000 per year; that Sonam's purchased and handled goods that moved in interstate commerce, including flagstone, bluestone, and marble used to design unique stonewalls or structures; and that Sonam's engages in construction projects in various states, including Massachusetts, Vermont, New Hampshire, Connecticut, and New York (*id*. at ¶¶ 15-17).  Sonam's is owned and operated by Lama, a Tibetan master stonemason, who controls all areas of the business, including hiring and firing employees, supervising and controlling employee work schedules and conditions of employment, determining the rate and method of payment, and maintaining employee records (*id*. at ¶¶ 19, 21).

Plaintiffs are all former employees of Sonam's, who held non-exempt positions as stonemasons/construction workers (*id*. at ¶¶ 10-13, 27, 37, 50, 62, 71).  Gonpo worked for Sonam's from January 1, 2008 to November 30, 2015, with promised rates of pay ranging from $9.00 to $14.00 per hour (*id*. at ¶¶ 31, 34).  Tobden worked for Sonam's from March 1, 2010 to March 1, 2012, with promised rates of pay ranging from $10.00 to $11.00 per hour (*id*. at ¶¶ 42,

45-46).  Phulotsang worked for Sonam's from January 1, 2008 to December 31, 2013, with promised rates of pay ranging from $9.00 to $14.00 per hour (*id*. at ¶¶ 51, 54-59).  Dechen worked for Sonam's from April 1, 2009 to November 1, 2011, with promised rates of pay ranging from $10.00 to $11.00 per hour (*id*. at ¶¶ 63, 66-67).

During the spring, summer, and fall months, Plaintiffs worked a total of 57 hours per week, consisting of ten hours each weekday and seven hours on Saturdays (*id*. at ¶¶ 32-33, 43-44, 52-53, 64-65).  However, Lama consistently failed to pay Plaintiffs for all of the hours they worked (*id*. at ¶¶ 35, 47, 60, 68).  Lama paid Gonpo and Phulotsang for only sixty hours per month each (*id*. at ¶¶ 35, 60).  At a rate of $9.00 per hour, this totaled $540.00 in cash per month, and at a rate of $14.00 per hour, this totaled $840.00 in cash per month (*id*.).  Lama paid Dechen for only between twenty and forty hours per week in cash (*id*. at ¶¶ 68-69).  Lama paid Tobden in cash, check, or a combination of both, but never for the full amount owed (*id*. at ¶¶ 47-48).  In addition, Lama failed to pay Plaintiffs overtime compensation of one-and-one-half times their regular rate of pay for all hours worked over forty in a given workweek (*id*. at ¶¶ 36, 49, 61, 70).  Plaintiffs allege that Defendants failed to keep full and accurate records of their hours and wages and that Defendants' failure to pay them at least the hourly minimum wage for each hour worked and failure to pay them their lawfully due overtime compensation of one-and-one-half times their regular rate of pay for all hours worked over forty in a given workweek were knowing and willful (*id*. at ¶¶ 24-25, 28).

In addition to his stonemasonry duties, Dechen also performed various duties for Lama at his place of residence for which Dechen received no compensation other than the ability to live at Lama's residence rent free (*id*. at ¶ 13, 77).  Dechen's domestic duties included cleaning Defendants' trucks and house, cooking, laundry, and shoveling snow (*id*. at ¶ 76).  During the

spring, summer, and fall months, Dechen performed his domestic duties each day after returning

from his stonemasonry duties until Lama fell asleep; he performed his domestic duties all day,

every day during the winter months (*id*. at ¶¶ 73-75).

Gonpo and other employees who had motor vehicles regularly drove themselves and

other employees, as well as necessary work materials, from Defendants' headquarters to

designated worksites and back (*id*. at ¶ 39).  The designated worksites included locations in

Massachusetts, New Hampshire, Vermont, New York, and Connecticut (*id*.).  When Defendants'

employees drove their own vehicles, they had to pay for the gas themselves and were not

reimbursed for gas or maintenance of their vehicles (*id*. at ¶¶ 38-40).

### D.  Affidavits

#### 1.  Affidavit of Jampa Gonpo

Gonpo, whose native language is Tibetan, worked for Defendants as a stonemason from

March 22, 2008 until November 15, 2015 (Dkt. No. 22-3 at ¶¶ 4, 33).  As a stonemason, Gonpo's

duties included cutting, shaping, and laying stone blocks or tiles to create or decorate structures

(*id*. at ¶ 7).  Gonpo was classified as a seasonal employee, but he worked from about March 22

through December 20 each year of his employment, except the final year, when he was

terminated on November 15, 2015 (*id*. at ¶ 6).  According to Gonpo, Defendants employed about

thirteen employees at any given time, and he got to know about twenty-five other employees

over the course of his employment, including opt-in Plaintiffs Tobden, Phulotsang, and Dechen,

as well as Fiodor Tahij (*id*. at ¶¶ 25-26).

When Gonpo was hired, he was not given any notice about his hourly rate of pay or

whether he would be paid overtime (*id*. at ¶ 5).  His initial rate of pay was $9.00 per hour (*id*. at ¶

8).  In 2010, his wage increased to $10.00 per hour (*id*. at ¶ 9).  These rates were consistent with

the starting rates of other employees; those who started before 2010 started at $9.00 per hour, and those who started in or after 2010 started at $10.00 per hour (*id*. at ¶ 27).  Employees would usually get a $1.00 per hour raise each year, except for members of Lama's family, who would get larger raises (*id*. at ¶ 28).

While in Defendants' employ, Gonpo was paid at irregular times, roughly every two weeks, by check (*id*. at ¶ 10).  Along with his paychecks, Gonpo received pay stubs, which invariably reflected that he had worked seventy-two hours over the course of the two-week pay period (*id*. at ¶ 12).[3]  However, during a typical two-week pay period, Gonpo actually worked 110 hours, or fifty-five hours per week, consisting of ten hour days Mondays through Fridays and seven hours on Saturdays, with a one-half hour break for lunch each day (*id*. at ¶¶ 13-14, 18).  Gonpo was not paid overtime (*id*. at ¶ 9).  Gonpo avers that most employees – apart from Phulotsang, Fiodor Tahij, Pema Sirther, and Lama's son, Sonam Gyaltsan – were paid in cash and did not receive pay stubs (*id*. at ¶ 11).

Between March 22, 2008 and the beginning of April 2008, Gonpo lived above the shop located at 261 Greenfield Road, South Deerfield, MA (*id*. at ¶ 20).  Thereafter, he moved into a company dormitory, where he lived with other employees (*id*. at ¶ 21).  There were two company dormitories, one of which housed up to three people, and the other, up to six (*id*)  Employees who lived with Gonpo included Tashi Paljor and Rechen Namgyal (*id*. at ¶ 22).

Employees were required to meet each morning at the shop, where they would be given their work assignments and take company trucks to the worksites (*id*. at ¶ 17).  About three or four employees would be assigned to each work crew (*id*. at ¶ 25).  At the end of each workday,

---

[3] These averments conflict with the allegations in the complaint and first amended complaint that Gonpo was paid monthly in cash for only sixty hours per month.

employees would return to the shop to drop off the company trucks before going home (*id*. at ¶ 19).[4]  Prior to 2010, Gonpo did not have a driver's license, and he would be driven to the shop (*id*. at ¶ 16).

According to Gonpo, he and other employees would often discuss their rates of pay, whether they had been paid late, and other terms and conditions of their employment when they were together at the shop, during lunches at worksites, and in the company dormitories (*id*. at ¶ 23).  From these conversations, he knew that most employees were paid in cash and did not receive pay stubs, that irregular payment was the norm, and that no employees were paid overtime (*id*. at ¶¶ 11, 24).  Gonpo reports that he and other employees complained frequently to management about the irregular pay schedule (*id*. at ¶ 10).  Gonpo avers that four non-Tibetan employees, who were paid in cash under the table, were not as forthcoming to him with their pay grievances (*id*. at ¶¶ 29-30).

### 2.  Affidavit of Jamyang Gyatso Phulotsang

Phulotsang, whose native language is Tibetan, worked for Defendants as a stonemason from sometime in 2008 until June 2012, when he left to work for a company in Virginia (Dkt. No. 22-4 at ¶¶ 4, 30; Dkt. No. 70-1 at ¶ 4).  He returned to work for Defendants from May 21, 2013 through December 22, 2013 (Dkt. No. 70-1 at ¶ 5).  As a stonemason, Phulotsang's duties included cutting, shaping, and laying stone blocks or tiles to create or decorate structures (*id*. at ¶ 7).  Each year of his employment, with the exceptions of 2012 and 2013, Phulotsang worked from about March 22 through December 20 (*id*. at ¶ 6).  According to Phulotsang, Defendants employed about twelve employees at any given time (*id*. at ¶ 26).

---

[4] There are no averments in Gonpo's affidavit regarding the allegations in the first amended complaint that Gonpo drove himself, other employees, and work materials to and from designated worksites in his own motor vehicle at his own expense.

When Phulotsang was hired, he was not given any notice about his hourly rate of pay or whether he would be paid overtime (*id*. at ¶ 8).  His initial rate of pay was $9.00 per hour (*id*. at ¶ 9).  This was consistent with the starting rates of other employees; those who started before 2010 started at $9.00 per hour, and those who started in or after 2010 started at $10.00 per hour (*id*. at ¶ 27).  Employees would usually get a $1.00 per hour raise each year, except for members of Lama's family, who would get larger raises (*id*. at ¶ 11).  Phulotsang received $1.00 per hour raises in 2010, 2011, 2012, and 2013 (*id*. at ¶ 10).

Phulotsang was paid at irregular times, roughly every two weeks (*id*. at ¶ 12).  Phulotsang was usually paid in cash, but very occasionally by check (*id*.).  He did not receive pay stubs reflecting his hours worked or rate of pay (*id*. at ¶ 13).  During a typical two-week pay period, Phulotsang worked 110 hours, or fifty-five hours per week, consisting of ten hour days Mondays through Fridays and seven hours on Saturdays, with a one-half hour break for lunch each day (*id*. at ¶¶ 14-15, 19).  He was not paid overtime (*id*. at ¶¶ 9-10).

When Phulotsang started working for Defendants in 2008, he moved into a company dormitory that could house up to six people (*id*. at ¶¶ 21-22).  Employees who lived with Phulotsang included Tobden, Darjey Thupten, and Lama's son, Sonam Gyatsen[5] (*id*. at ¶ 23).  Initially, Lama said there would be no charge for the room, but in either 2008 or 2009, Lama began charging Phulotsang $100.00 per month in rent, as well as six months' back rent (*id*. at ¶ 21).  In 2011, Lama raised the rent to $150.00 per month (*id*.).

Employees were required to meet each morning at the shop at 261 Greenfield Road, South Deerfield, MA, where they would be given their work assignments and take company trucks to the worksites (*id*. at ¶ 16, 18).  About three or four employees would be assigned to

---

[5] Gonpo and Phulotsang spell Lama's son's name differently in their affidavits.

each work crew (*id*. at ¶ 26).  At the end of each workday, employees would return to the shop to drop off the trucks before going home (*id*. at ¶ 20).  When he started working, Phulotsang was driven from the dormitory to the shop and back by a Russian man, whose name Phulotsang does not remember (*id*. at 17).  Later, he was driven by his roommate and Lama's son, Sonam Gyatsen (*id*.).

Phulotsang did not know what overtime was when he started working for Defendants in 2008, nor did any of Defendants' other then-current employees (*id*. ¶¶ 28-29).  He avers that the other employees were the only people he interacted with while employed by Defendants; they went to and from work together, worked together, ate together, and went to bed together (*id*. at ¶ 29).  In addition, it was difficult for them to communicate with anyone else because of their limited English skills (*id*. at ¶ 30).  Phulotsang did not learn about overtime until he started working for the company in Virginia, at which time he learned about it from co-workers there (*id*. at ¶ 31).  When Phulotsang started working for Defendants again in May of 2013, he asked Lama if he would pay Phulotsang overtime (*id*. at ¶ 33).  Lama would always respond by saying that he would, but he never did (*id*. at ¶¶ 34-35).

According to Phulotsang, he and other employees would often discuss their rates of pay, whether they had been paid late, and other terms and conditions of their employment when they were together at the shop, during lunches at the worksites, and in the dormitories (*id*. at ¶ 24).  From these conversations, he knew that irregular payment was the norm and that no employees were paid overtime (*id*. at ¶ 25).  Phulotsang reports that he and other employees complained frequently to management about the irregular pay schedule (*id*. at ¶ 12).

Phulotsang avers that he "never felt like [he] had an opportunity to leave [Defendants'] permanently" (*id*. at 38).  He indicates that he and other workers were escaping persecution in

Tibet and could not return there (*id*. at ¶ 39).  In addition, other jobs were inconsistent and did not provide housing (*id*. at ¶ 40).

### 3.   Affidavit of Tulku Dechen

Dechen, whose native language is Tibetan, worked for Defendants as a stonemason from about April 2009 through November 2011 (Dkt. No. 22-5 at ¶¶ 3, 13).  Dechen normally worked ten hour days Mondays through Fridays and six to eight hours on some Saturdays, with a 30-minute lunch break each day (*id*. at ¶ 5).  In an average week, Dechen worked 54.5 hours as a stonemason (*id*.).

In addition to his stonemasonry duties, Dechen worked for Lama as a domestic worker (*id*. at ¶ 4).  His domestic duties included housekeeping, laundry, cleaning trucks, cooking meals, preparing for parties, and removing snow (*id*. at ¶¶6-8).  After Dechen finished his stonemasonry duties each day, he would go to Lama's house and begin his domestic work (*id*. at ¶ 6).  During the summer, he would work an additional five-to-six hours Mondays through Fridays, as well as some unspecified period of time on Saturdays and Sundays (*id*. at ¶¶5, 7).  During the winter, he worked as a domestic worker for Lama full-time (*id*. at ¶ 8).

When Dechen started working for Defendants, he was paid at a rate of $10.00 per hour for the first two months, after which it was increased to $11.00 per hour until the end of his employment (*id*. at ¶ 9).  According to Dechen, this was his rate for his stonemasonry duties; he was not compensated at all for his domestic duties, at least in the summer (*id*. at ¶ 9).  Dechen was paid in cash very irregularly, ranging from every week to every three months (*id*. at ¶ 10).  Dechen was not paid overtime and knows from conversations with other employees during lunchtimes and to and from worksites that they, too, were not paid overtime (*id*. at ¶ 11).

4.  Tobden's Affidavit

Tobden, whose native language is Tibetan, worked for Defendants as a stonemason from March 2010 until 2012 (Dkt. No. 22-6 at ¶¶ 4, 26).  As a stonemason, Tobden's duties included cutting, shaping, and laying stone blocks or tiles to create or decorate structures (*id*. at ¶ 6).  He worked from late March through late December each year of his employment (*id*. at ¶ 5).  According to Tobden, Defendants employed about thirteen employees at any given time (*id*. at ¶ 23).

When Tobden was hired, he was not given any notice about his hourly rate of pay or whether he would be paid overtime (*id*. at ¶ 7).  His initial rate of pay was $10.00 per hour (*id*. at ¶ 8).  This was consistent with the starting rates of other employees; those who started before 2010 started at $9.00 per hour, and those who started in or after 2010 started at $10.00 per hour (*id*. at ¶ 9).  Employees would usually get a $1.00 per hour raise each year, except for members of Lama's family, who would get larger raises (*id*. at ¶ 11).  Tobden received a $1.00 per hour raise in 2011 (*id*. at ¶ 10).

Tobden was paid at irregular times, roughly every two weeks, and often less money than he was owed (*id*. at ¶ 12).  Tobden was usually paid in cash, but very occasionally by check (*id*.).  He did not receive pay stubs reflecting his hours worked or rate of pay (*id*. at ¶ 13).  During a typical two-week pay period, Tobden worked 110 hours, or fifty-five hours per week, consisting of ten hour days Mondays through Fridays and seven hours on Saturdays, with a one-half hour break for lunch each day (*id*. at ¶¶ 14-15, 18).  He was not paid overtime (*id*. at ¶¶ 8, 10).

When Tobden started working for Defendants in 2010, he moved into a company dormitory (*id*. at ¶ 20).  Employees were required to meet each morning at the shop, where they would be given their work assignments and take company trucks to the worksites (*id*. at ¶¶ 16-

17).  About three to four employees would be assigned to any one work crew (*id*. at ¶ 23).  At the end of each workday, employees would return to the shop to drop off the trucks before going home (*id*. at ¶ 19).  According to Tobden, he and other employees would often discuss their rates of pay, whether they had been paid late, and other terms and conditions of their employment, when they were together at the shop, during lunches at the worksites, and in the dormitories (*id*. at ¶ 21).  From these conversations, he knew that irregular payment was the norm and that no employees were paid overtime (*id*. at ¶ 22).  Tobden reports that he and other employees complained frequently to management about the irregular pay schedule and about underpayment of wages (*id*. at ¶ 12).

     5.  <u>Sonam Rinchen Lama's Affidavit</u>

Lama avers that he came to the United States in 1986 and became a U.S. citizen in 1990 (Dkt. No. 31-3 at ¶ 1).  He has had his own stone mason business since 1986 (*id*. at ¶ 2).  Lama met Gonpo in January 2004, when he was visiting Nepal (*id*. at ¶ 3).  Gonpo, who claimed to be a Buddhist monk, was staying in the monastery where Lama was visiting, and the two became friendly (*id*.).  Sometime thereafter, Lama received a phone call telling him that Gonpo had been arrested by the Nepalese police for illegal trading of wild animal skins (*id*. at ¶ 4).  Gonpo claimed that it was a case of mistaken identity, and he was looking for a loan of $8,000 to pay legal fees (*id*.).  Lama contacted a friend in Nepal and borrowed $5,000 for Gonpo's legal fees (*id*.).  Lama's understanding is that Gonpo served one-and-one-half years for this offense and was then released (*id*.).

Lama next heard from Gonpo in early 2007 (*id*. at ¶ 5).  Gonpo was looking for $20,000 to come to the United States (*id*.).  Lama decided to loan Gonpo $20,000, with the understanding that Gonpo would pay it back (*id*.).  Gonpo came to the United States and stayed in Florida for a

period of time before moving into Lama's home for a time in early 2008 (*id*. at ¶ 6).  During this time, Gonpo began paying back the loans, some in cash, as well as providing childcare (*id*. at ¶ 7).  The final payment for the loans was in July 2015 (*id*.).

Presently, Gonpo is in jail on charges related to alleged sexual abuse perpetrated on Lama's daughter, who was a minor at the time (*id*. at ¶ 8; *see also* Dkt. No. 31-2 (indictments against Gonpo for aggravated rape and abuse of a child, rape and abuse of a child, and indecent assault and battery on a child under fourteen)).  Lama believes that Gonpo is bringing this lawsuit to intimidate him so that the criminal charges against Gonpo will be dropped (*id*. at ¶ 9).

## II.   DISCUSSION

### A.   Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1)[6]

Defendants have moved to dismiss both the original complaint and the first amended complaint on jurisdictional grounds pursuant to Fed. R. Civ. P. 12(b)(1).  Defendants assert that both pleadings fail to plausibly plead facts that establish jurisdiction with respect to the federal claims asserted therein, i.e. the FLSA claims and the 26 U.S.C. § 7434 claim.  The court addresses each in turn.

#### 1.   FLSA Claims

Defendants argue that the court lacks subject matter jurisdiction over Plaintiffs' FLSA claims because the allegations of the complaint and the first amended complaint fail to facially show either that Plaintiffs are "covered employees" under 29 U.S.C. § 207(a)(1), or that Sonam's is an "interstate enterprise" as defined in 29 U.S.C. § 203(s)(1)(A)(i) and (ii), one of which

---

[6] "'When faced with motions to dismiss under both 12(b)(1) and 12(b)(6), a district court, absent good reason to do otherwise, should ordinarily decide the 12(b)(1) motion first . . . .'"  *Katz v. Pershing, LLC*, 806 F. Supp. 2d 452, 456 (D. Mass. 2011) (quoting *Ne. Erectors Ass'n of the BTEA v. Sec'y of Labor, Occupational Safety & Health Admin.*, 62 F.3d 37, 39 (1st Cir. 1995)).

Plaintiffs must establish to bring their claims within the ambit of the FLSA.  Where the

defendant mounts a "sufficiency challenge" to jurisdiction, as Defendants do here, the court

"assess[es] the sufficiency of the plaintiff's jurisdictional allegations by construing the complaint

liberally, treating all well-pled facts as true and drawing all reasonable inferences in the

plaintiff's favor."  *United States ex rel. Cunningham v. Millennium Labs.*, 202 F. Supp. 3d 198,

202 (D. Mass. 2016) (citing *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001)).

   "[T]he FLSA covers only employees who are (1) 'engaged in commerce or in the

production of goods for commerce,' ('individual coverage') or (2) 'employed in an enterprise

engaged in commerce or in the production of goods for commerce' ('enterprise coverage')."

*Cruz v. Boston Litig. Sols.*, No. 13-11127-LTS, 2016 WL 3568254, at * 5 (May 24, 2016) (citing

29 U.S.C. § 207(a)(1)).  A separate definitions section of the act defines "commerce" as "trade,

commerce, transportation, transmission, or communication among the several States or between

any State and any place outside thereof."  29 U.S.C. § 203(b).  An "enterprise engaged in

commerce or in the production of goods for commerce" is defined as an enterprise that "has

employees engaged in commerce or in the production of goods for commerce, or that has

employees handling, selling, or otherwise working on goods or materials that have been moved

in or produced for commerce by any person;" and "is an enterprise whose annual gross volume

["AGV"] of sales made or business done is not less than $500,000 . . . ."  *Id*. at § 203(s)(1)(A).

Thus, "[o]ne of the 'basic elements' necessary to showing an entitlement to relief under the

FLSA is that 'the work involved interstate activity.'  The complaint must therefore allege facts

sufficient to establish that either the plaintiff's work or another employee's work involved

interstate commerce within the meaning of the Act."  *Martinez v. Petrenko*, 792 F.3d 173, 179

(1st Cir. 2015) (citations omitted).

In making their motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), Defendants treat the question of coverage under the FLSA as jurisdictional. It is not. As observed by the Supreme Court, "[s]ubject matter jurisdiction in federal-question cases is sometimes erroneously conflated with a plaintiff's need and ability to prove the defendant bound by the federal law asserted as the predicate for relief – a merits-related determination." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 511 (2006) (quoting 2 James W. Moore et al., *Moore's Federal Practice*, § 12.30[1], p. 12-36.1 (3d ed. 2005)). Defendants make this mistake here. "To mitigate this confusion, the Court provided clear guidance for distinguishing between the two concepts: '[W]hen Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character.'" *Chao v. Hotel Oasis, Inc.*, 493 F.3d 26, 33 (1st Cir. 2007) (alteration in original) (quoting *Arbaugh*, 546 U.S. at 516). Applying this "readily administrable bright line" rule, *Arbaugh*, 546 U.S. at 516, the First Circuit has held that "ADV coverage [under the FLSA] is not jurisdictional," but rather is an element of the claim. *Chao*, 493 F.3d at 33. In reaching this determination, the *Chao* court reasoned that "[t]he FLSA places the ADV limitation in the definitions section of the Act, and does not suggest that the ADV limitation is jurisdictional." *Id*. (citing 29 U.S.C. §§ 203(s)(1)(A), 216). This same rationale applies to the remaining portion of the definition of an "enterprise engaged in commerce or in the production of goods for commerce," i.e. that the enterprise must have "employees engaged in commerce or in the production of goods for commerce," or have "employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person." 29 U.S.C. § 203(s)(1)(A). The restriction is nonjurisdictional. *See William v. Imeni*, No. 5:16-CV-516-FL, 2017 WL 2266849, at *4 (E.D.N.C. May 23, 2017) (denying the defendants' motion to dismiss pursuant to Fed. R. Civ. P.

12(b)(1) because the annual gross sales and enterprise coverage limitations are treated as elements of the claim and do not affect the court's subject matter jurisdiction); *Brown v. Peaches & Pears Social Club, Inc.*, No. 4:11CV00224 SWW, 2011 WL 6153630, at *2-3 (E.D. Ark. Dec. 12, 2011) (denying the defendant's motion to dismiss for lack of subject matter jurisdiction because the FLSA coverage issues raised by the defendant were non-jurisdictional and instead involved the merits of the claims); *Daniel v. Pizza Zone Italian Grill & Sports Bar, Inc.*, No. 8:07-cv-2359-T-23TGW, 2008 WL 793660, at *1 n.2 (M.D. Fla. Mar. 24, 2008) (citing *Arbaugh*, 546 U.S. at 516) ("[T]he FLSA's description of an employee and an enterprise covered by the statute prescribes the elements necessary to state a claim for relief under the FLSA, not the prerequisites to federal jurisdiction."). Therefore, Defendants' 12(b)(1) motions to dismiss the FLSA claims in the complaint and first amended complaint on jurisdictional grounds are unfounded, and the court recommends that they be denied.[7]

---

[7] Even if Defendants were to raise the annual gross sales and enterprise coverage limitations through the proper procedural mechanism of a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), they would be unlikely to prevail. Plaintiffs have alleged in both the complaint and first amended complaint that Sonam's has an AGV of not less than $500,000 and that Sonam's handled goods that moved in interstate commerce, including flagstone, bluestone, and marble used to design unique stonewalls or structures. These allegations are sufficient to state a claim for enterprise coverage, particularly where the specific information as to the dollar amount of business and the details of employee activity are in the possession of Defendants. *See, e.g., Farrell v. Pike*, 342 F. Supp. 2d 433, 439 (M.D.N.C. 2004) (holding that "bare bones allegations are acceptable for 'enterprise' coverage'" since "the specific information as to the dollar amount of business and the details of all employee activity will largely be unknown to the plaintiff, but known to the defendant"). Furthermore, the first amended complaint adds allegations that Sonam's engaged in construction projects in Massachusetts, Vermont, New Hampshire, Connecticut, and New York, and that Gonpo, as part of his employment, transported himself, other employees, and materials to work sites in those five states.

2.  26 U.S.C. § 7434 Claim

Defendants also purport to challenge the facial sufficiency of the allegations of the complaint and the first amended complaint necessary to establish the court's jurisdiction to hear Plaintiffs' 26 U.S.C. § 7434 claim.  However, while Defendants include the argument in their Fed. R. Civ. P. 12(b)(1) motions, Defendants do not argue that the court lacks jurisdiction to hear claims under 26 U.S.C. § 7434, which jurisdiction it unquestionably possesses.  *See* 28 U.S.C. § 1331 (providing that the "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States").  Rather, Defendants argue that Plaintiffs have failed to adequately state a claim.  Indeed, Defendants' argument for dismissal of the 26 U.S.C. § 7434 claim in their Rule 12(b)(1) motions is essentially identical to their argument for dismissal in their Rule 12(b)(6) motion.  Accordingly, the court recommends that Defendants' 12(b)(1) motions to dismiss the 26 U.S.C. § 7434 claim be denied, and the court analyzes the sufficiency of the allegations in addressing Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), *infra*.

**B.  Motion to Dismiss Based on the Improper Addition of Claims and Parties**

Defendants have moved to dismiss the first amended complaint as untimely and on procedural grounds.  Specifically, Defendants complain that Gonpo did not file his first amended complaint until May 22, 2017, while, pursuant to the court's Scheduling Order, the deadline for filing motions seeking leave to amend the pleadings was May 19, 2017 (Dkt. No. 21).  In addition, Defendants fault Gonpo for failing to seek leave to file his first amended complaint.  Defendants assert that they are prejudiced by Gonpo's untimely addition of claims and parties without motion practice and beyond the date prescribed in the court's Scheduling Order.

20

The court declines to recommend dismissal of the first amended complaint based on Gonpo's exceeding the deadline set by the court in the Scheduling Order by a mere three days. Indeed, the difference was the matter of a weekend. Under these circumstances, the court finds the timeliness violation to be *de minimus*. The court is more troubled by Gonpo's failure to seek leave to file his first amended complaint, which he was required to do. Federal Rule of Civil Procedure 15(a) addresses amendments to the pleadings before trial. Fed. R. Civ. P. 15(a). Pursuant to subparagraph (1)(A), a party may amend its pleading once as a matter of course within 21 days after serving it, or, pursuant to subparagraph (1)(B), if the pleading is one to which a responsive pleading is required, within "21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." *Id.* If the conditions of subparagraphs (1)(A) or (1)(B) are not met, subparagraph (2) mandates that, "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." *Id.* Here, Defendants filed an answer to the original complaint on November 25, 2016 (Dkt. No. 14). Accordingly, pursuant to subparagraph (1)(B), Gonpo had until December 16, 2016, to file an amended complaint as a matter of right. Gonpo did not do so, and, therefore, he was required, pursuant to subparagraph (2), to either obtain Defendants' written consent or leave of court to file the amended complaint.

Gonpo argues that he was not required to seek leave because he filed his first amended complaint within 21 days of Defendants' filing of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1). Gonpo misreads subparagraph (1)(B), which contains the clear limiting language, "whichever is earlier." A party may only amend its pleading as of right within twenty-one days of the earlier of the filing of a responsive pleading or the filing of a motion under Rule 12(b), (e), or (f). Fed. R. Civ. P. 15(a)(1)(B). Here, Defendants filed their answer earlier, which triggered

the running of the twenty-one day clock.  Their subsequent filing of a motion under Rule 12(b)

does not restart the clock.  *See, e.g., U.S. ex rel. D'Agostino v. EV3, Inc.*, 802 F.3d 188, 192-93

(1st Cir. 2015) (noting that a plaintiff's right to amend does not renew each time a defendant files

an answer or responsive motion).

Accordingly, Gonpo was required to obtain Defendants' written consent or the court's

leave to file his amended complaint.  Despite this procedural failure, the court, with some

reluctance, recommends construing the filing of the amended complaint as an implicit request for

leave to amend.  *Id*. at 194 (noting that the district court construed the relator's filing of an

amended complaint as an implicit request for leave to amend).  *See also NPS, LLC v. Ambac

Assur. Corp.*, 706 F. Supp. 2d 162, 170 n.5 (D. Mass. 2010) (noting the court's general practice

of attempting to reach the merits of a dispute, rather than "disposing of a case on [a] technical –

but remediable – procedural" shortcoming).

Federal Rule of Civil Procedure 15(a) provides that leave to amend should be "freely

give[n] . . . when justice so requires."[8]  Fed. R. Civ. P. 15(a)(2).  This standard reflects a "liberal"

amendment policy.  *O'Connell v. Hyatt Hotels of P.R.*, 357 F.3d 152, 154 (1st Cir. 2004).

"Reasons for denying leave include undue delay in filing the motion, bad faith or dilatory

motive, repeated failure to cure deficiencies, undue prejudice to the opposing party, and futility

of amendment."  *U.S. ex rel. Gagne v. City of Worcester*, 565 F.3d 40, 48 (1st Cir. 2009) (citing

*Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Undue delay is not an issue here as the amended

pleading was filed within three days of the expiration of the deadline for seeking leave to amend

---

[8] While requests for leave to amend made in derogation of a scheduling order are normally
evaluated under Fed. R. Civ. P. 16(b)(4)'s more stringent "good cause" standard, *D'Agostino*,
802 F.3d at 194, the court here invokes Rule 15(a)'s "freely given" standard based on the *de
minimus* nature of the violation.

and at a time when discovery was ongoing (Dkt. No. 21).  Dispositive motion practice has not

even been scheduled.  Nor is there any suggestion that Gonpo acted in bad faith or with a

dilatory motive.  Defendants argue that they are prejudiced because the amended complaint

"substantially alters the factual and legal parameters of this litigation" (Dkt. No. 50).  However,

Defendants have not shown undue prejudice, such as a need to reopen discovery with additional

costs or to postpone trial in the matter.  *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 12 (1st Cir.

2004) (citing *Acosta-Mestre v. Hilton Int'l of P.R., Inc.*, 156 F.3d 49, 52 (1st Cir. 1998)).  Under

these circumstances, the question of whether Gonpo should be granted leave to amend boils

down to one of futility.  "'Futility' means that the complaint, as amended, would fail to state a

claim upon which relief could be granted."  *Glassman v. Computervision Corp.*, 90 F.3d 617,

623 (1st Cir. 1996) (citations omitted).  The court reviews a proposed amended complaint for

futility under the "standard [that] applies to motions to dismiss under Fed. R. Civ. P. 12(b)(6)."

*Adorno v. Crowley Towing & Transport Co.*, 443 F.3d 122, 126 (1st Cir. 2006) (citing

*Glassman*, 90 F.3d at 623).  Because Defendants have moved to dismiss pursuant to Fed. R. Civ.

P. 12(b)(6), they have not been deprived of the opportunity to be heard on the matter, and the

court recommends that Defendants' motion be treated as an opposition to Plaintiffs' implicit

request for leave to amend.

### C.  Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

#### 1.  Federal Claims

##### a.  FLSA Claims – Statute of Limitations

Defendants first argue that Phulotsang's, Tobden's, and Dechen's FLSA claims are

subject to dismissal because they are barred by the statute of limitations.  "'Affirmative defenses,

such as the statute of limitations, may be raised in a motion to dismiss under Federal Rule of

Civil Procedure 12(b)(6), provided that the facts establishing the defense [are] clear "on the face

of the plaintiff's pleadings."'" *Santana-Castro v. Toledo-Dávila*, 579 F.3d 109, 113-14 (1st Cir.

2009) (quoting *Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc.*, 524 F.3d 315, 320 (1st Cir.

2008)).  "Under Rule 12(b)(6), the district court may properly consider only facts and documents

that are part of or incorporated into the complaint; if matters outside the pleadings are

considered, the motion must be decided under the more stringent standards applicable to a Rule

56 motion for summary judgment." *Trans-Spec*, 524 F.3d at 321 (citing *Garita Hotel Ltd. P'ship

v. Ponce Fed. Bank*, 958 F.2d 15, 18 (1st Cir. 1992)).  "In making . . . an assessment under Rule

12(b)(6), a district court engages in no fact finding."  *Abdallah v. Bain Capital LLC*, 752 F.3d

114, 119 (1st Cir. 2014).  "Rather, it presumes that the facts are as properly alleged by plaintiffs .

. . , with reasonable inferences drawn in plaintiffs' favor."  *Id*. (citing *Schatz v. Republican State

Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012)).  "When the allegations in a complaint show

that the passage of time between the events giving rise to the claim and the commencement of

the action exceeds the applicable limitations period, a district court should grant a 12(b)(6)

motion by the defense if the complaint (and any other properly considered documents) 'fails to

"sketch a factual predicate" that would' provide a basis for tolling the statute of limitations."  *Id*.

(quoting *Trans-Spec*, 524 F.3d at 320).  In other words, "where it appears from the dates and

facts recounted *in the complaint* that the statute of limitations has run, the plaintiff has an

affirmative burden to plead in its complaint the facts required to establish estoppel."  *Trans-Spec*,

524 F.3d at 325-26 (citing *LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 509-10 (1st Cir.

1998)).

　　　　FLSA claims must be commenced within two years after the cause of action accrues,

except that willful violations may be commenced within three years.  29 U.S.C. § 255.  *See also*

*Roberts v. TJX Companies, Inc.*, No. 13-cv-13142-ADB, 2017 WL 1217114, at *8 (D. Mass. Mar. 31, 2017).  A cause of action under the FLSA "accrues, at the latest, when a plaintiff's employment ends."  *Pike v. New Generation Donuts, LLC*, No. 12-12226-FDS, 2016 WL 707361, at *4 (D. Mass. Feb. 20, 2016); *see McLaughlin v. Boston Harbor Cruises, Inc.*, No. 03-10905-GAO, 2006 WL 1998629, at *2 (D. Mass. July 17, 2006).  Section 256 of the statute defines when an action is "commenced" for purposes of the statute of limitations:

> In determining when an action is commenced for the purposes of section 255 of this title, an action commenced . . . under [the FLSA] shall be considered to be commenced on the date when the complaint is filed; except that in the case of a collective or class action instituted under [the FLSA] . . . , it shall be considered to be commenced in the case of any individual claimant –
>
>> (a) on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought; or
>>
>> (b) if such written consent was not so filed or if his name did not so appear – on the subsequent date on which such written consent is filed in the court in which the action was commenced.

29 U.S.C. § 256.  Thus, for a named plaintiff who seeks to bring a collective action, the action is considered "commenced" only when a complaint specifically naming the person as a plaintiff and the person's written consent to become a party plaintiff are filed.  *See Pike*, 2016 WL 707361, at *5; *McLaughlin*, 2006 WL 1998629, at *2.  An individual capacity suit, on the other hand, is considered commenced when the complaint is filed.  *See McLaughlin*, 2016 WL 1998629, at * 2.

Applying these principles to this case, only Gonpo's action is timely.  Gonpo's employment ended with his November 30, 2015 termination, giving him until November 30, 2017 to commence an action for non-willful violations of the FLSA and until November 30,

2018 for willful violations.  Both his September 27, 2016 complaint and his March 31, 2017 written consent preceded these dates, bringing both his individual and purported collective actions within the statute of limitations for willful and non-willful violations.  In contrast, Dechen's employment ended on November 1, 2011, Tobden's on March 1, 2012, and Phulotsang's on December 31, 2013.  Neither the commencement of their individual actions with the filing of their notices on March 31, 2017, nor the commencement of their putative collective action with the filing of the first amended complaint on May 22, 2017, met the two or three year statutes of limitations.  Thus, Phulotsang's, Tobden's, and Dechen's FLSA claims are time barred unless there is a basis to conclude that the statute of limitations was tolled.  Plaintiffs attempt to establish that equitable tolling is appropriate.

"Given that the relevant limitation period originates in a federal statute, the issue of equitable tolling is governed by federal law." *Chico-Velez v. Roche Prods., Inc.*, 139 F.3d 56, 58 n.3 (1st Cir. 1998) (citing *Weddel v. Sec'y of HHS*, 100 F.3d 929, 931 (Fed. Cir. 1996)). "'Equitable tolling' is an umbrella term for the notion that a statute of limitations – unless its time limit is 'jurisdictional' – may be extended for equitable reasons not acknowledged in the statute creating the limitations period." *David v. Hall*, 318 F.3d 343, 345-46 (1st Cir. 2003) (citing *Delaney v. Matesanz,* 264 F.3d 7, 13-14 (1st Cir. 2001)).  "Equitable tolling is only warranted in 'extraordinary circumstances,' *Delaney*, 264 F.3d at 14, and should be granted 'sparingly,' *Bonilla v. Muebles J.J. Alvarez, Inc.*, 194 F.3d 275, 278 (1st Cir. 1999)." *Roberts*, 2017 WL 1217114, at *7.  "'Generally, a litigant seeking equitable tolling bears the burden of establishing two elements:  (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.'" *Neves v. Holder*, 613 F.3d 30, 36 (1st Cir. 2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).   The First Circuit considers five

criteria for equitable tolling within this two-part standard established by the Supreme Court.  *Id.* at 36 n.5.  "Those criteria are: '(1) a lack of actual notice of a time limit; (2) a lack of constructive notice of a time limit; (3) diligence in the pursuit of one's rights; (4) an absence of prejudice to the party opponent; and (5) the claimant's reasonableness in remaining ignorant of the time limit.'"[9]  *Id.* (quoting *Jobe v. I.N.S.*, 238 F.3d 96, 100 (1st Cir. 2001)).

A common basis asserted for equitable tolling, and the one pressed by Plaintiffs in this case, is "excusable ignorance."  *Kale*, 861 F.2d at 752.  In the Age Discrimination in Employment Act ("ADEA") context, the First Circuit has noted that,

> [w]hile it is clear that an employee's ignorance of his statutory rights, in itself, will not toll a statute of limitations, it is equally plain that where such ignorance is caused either by misconduct of an employer or by a failure of that employer to conspicuously post the informational EEOC notices required by the ADEA, there may be a valid claim for equitable tolling – at least until the employee receives actual notice of his statutory rights or retains an attorney.

*Id.* (internal citations omitted).  *See also Mercado v. Ritz-Carlton San Juan Hotel, Spa & Casino*, 410 F.3d 41, 47 (1st Cir. 2005) (quoting *Earnhardt v. P. R.*, 691 F.2d 69, 72 (1st Cir. 1982)) ("While an employer's affirmative misconduct provides one rationale for extending the filing period, we have recognized that an employer's violation of the EEOC posting requirement may provide a second basis for an extended filing period 'where the employee had no other actual or constructive knowledge of [the] complaint procedures.'").  The First Circuit outlined the framework a court should follow where a plaintiff claims excusable ignorance.  *See Kale*, 861

---

[9] As the First Circuit has explained, however, "[t]hough this framework provides guidance, it is not exhaustive; rather, we adhere to the notion that 'it is in the nature of equity to entertain case-specific factors that may counsel in favor of tolling.'"  *Farris v. Shinseki*, 660 F.3d 557, 564 (1st Cir. 2011) (quoting *Kale v. Combined Ins. Co. of Am.*, 861 F.2d 746, 753 n.9 (1st Cir. 1988)).

F.2d at 753.  A court should first determine whether the plaintiff had actual or constructive

knowledge of his rights.  *Id*.

> Actual knowledge occurs where an employee either learns or is
> told of his ADEA rights, even if he becomes only generally aware
> of the fact that there is a statute outlawing age discrimination and
> providing relief therefor. ….  Constructive knowledge, on the other
> hand, is "attributed" to an employee in situations where he has
> retained an attorney, or where an employer has fulfilled his
> statutory duty by conspicuously posting the official EEOC notices
> that are designed to inform employees of their ADEA rights.  In
> either case, the law imputes knowledge of the ADEA to the
> plaintiff regardless of whether, in fact, he knew of his rights.  If the
> court finds that the plaintiff knew, actually or constructively, of his
> ADEA rights, ordinarily there could be no equitable tolling based
> on excusable ignorance.  If, however, the employee has no
> knowledge of his rights and his ignorance is due to misleading
> conduct by the defendant or failure of the defendant to post the
> required EEOC notices, then an initial case for equitable tolling
> has been made.

*Id*. (citations omitted).  *See also Mercado*, 410 F.3d at 48 ("Here, where appellants have asserted

that no informational notices were posted and that they had no knowledge of their rights until

informed by their attorney, they have met the threshold requirements for avoiding dismissal of

their Title VII suit.").  Once the employee has made out an initial case for equitable tolling, the

court should go on to consider any "countervailing equities against the plaintiff" to determine if

equitable tolling should be applied, including whether the plaintiff diligently pursued his claim,

whether his ignorance of his rights was reasonable under the circumstances, and whether

allowing equitable tolling would still fulfill the basic purposes behind the limited filing period.

*Kale*, 861 F.2d at 753.  "Finally, even if the court finds that the above factors call for equitable

tolling, it must then take account of the degree to which delay prejudices the defendant."  *Id*.

(citing *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984)).  *See also Bartlett v.*

*Dept. of the Treasury*, 749 F.3d 1, 10 (1st Cir. 2014) (applying the *Kale* framework to a Rehabilitation Act claim).

Here, while Plaintiffs assert excusable ignorance as the basis for equitable tolling of the statute of limitations for Phulotsang's, Tobden's, and Dechen's claims, the first amended complaint contains no allegations that could form a factual predicate for such relief.  The first amended complaint does not allege that Phulotsang, Tobden, and Dechen lacked knowledge – actual and constructive – of their rights under the FLSA.  The FLSA, like the ADEA, has a posting requirement, and at least one court in the First Circuit has held that failure to post the required FLSA notice may be an "extraordinary circumstance" that permits equitable tolling. *Perez v. Shucks Maine Lobster LLC*, No. 2:15-cv-00348-JAW, 2016 WL 6304674, at *11 (Oct. 27, 2016).  *See also Guarcas v. Gourmet Heaven, LLC*, C.A. No. 15-056ML, 2016 WL 7632844, at *4 (D.R.I. Nov. 30, 2016) ("[T]he claims of the two Plaintiffs whose claims go back more than three years are saved by plausible allegations that Defendants failed to comply with state and federal notice requirements and failed to notify these non-English speaking Plaintiffs of their rights under the FLSA.  At the Fed. R. Civ. P. 12(b)(6) phase, these allegations are more than sufficient to support equitable tolling.").  Yet the first amended complaint contains no allegation that Defendants failed to comply with the posting requirement.  Nor does the first amended complaint set forth any facts establishing Phulotsang's, Tobden's, and Dechen's diligence in pursuing their FLSA rights once they acquired knowledge.  Thus, Plaintiffs fail to meet their burden of pleading the facts sufficient to support equitable tolling in their complaint, and their FLSA claims are subject to dismissal on statute of limitations grounds.

Instead of pleading the facts necessary to establish tolling in the first amended complaint, as it was incumbent on Plaintiffs to do, Plaintiffs rely on affidavits they submitted in support of

their motion for conditional certification and subsequent motion for equitable tolling.  The court

cannot consider these materials without converting the motion to dismiss into a motion for

summary judgment, which the court does not recommend doing at this early stage in the

litigation.[10]  *See Trans-Spec*, 524 F.3d at 321 (noting that the decision whether to convert a

motion to dismiss to a motion for summary judgment lies in the discretion of the district court).

     Moreover, even if Plaintiffs incorporated the averments in their affidavits into an

amended complaint, they would still fail to make out an initial case for equitable tolling.  The

affidavits do not establish that Phulotsang, Tobden, and Dechen lacked actual or constructive

knowledge of their rights under the FLSA, the crucial element for grounding a claim of

excusable ignorance.  *See Kale*, 861 F.2d at 753.  While Plaintiffs state in argument that

Phulotsang, Tobden, and Dechen did not hold any jobs in the United States before working for

Defendants and that Defendants failed to post the required FLSA notices to put Plaintiffs on

notice of their rights, none of the affidavits substantiate these claims.

     In their motion for equitable tolling, Plaintiffs argue that the affidavits establish

"extraordinary circumstances" because they show that Plaintiffs were kept "under the thumb of

Defendants" (Dkt. No. 63 at 5).  According to Plaintiffs, Defendants had a practice of hiring

newly arrived Tibetan immigrants, including Plaintiffs, who were escaping political and religious

persecution in their home country.  Defendants then isolated their non-English speaking

employees by making them work long hours and housing them in employer-owned dormitories,

so that they only came into contact with one another and were dependent on Defendants for their

housing and income.  Even crediting the assertions in Plaintiffs' affidavits as true, they fail to

---

[10] Before the motion could be treated as one for summary judgment, Defendants would have to
be given notice and "a reasonable opportunity to present all the material that is pertinent to the
motion."  Fed. R. Civ. P. 12(d).

establish that Phulotsang, Tobden, and Dechen were "under the thumb of Defendants" all the time.  The affidavits do not speak to any restrictions on Defendants' employees after working hours, on Sundays, or during the time they were not working each year (i.e. late December through late March).  *Cf. Lama v. Malik*, 192 F. Supp. 3d 313, 319 (E.D.N.Y. 2016) (denying equitable tolling where non-English speaking plaintiff who lived with her employer and was reliant on her employer "for her social life as well as any transportation beyond walking" was nevertheless free to "communicate by phone with her family" and free to leave if she wanted). Indeed, Phulotsang indicates that he left Defendants' employ for nearly a year to go work for a company in Virginia, where he learned about overtime wages.  Even more significantly, the affidavits are entirely silent as to the lengthy time periods after Phulotsang, Tobden, and Dechen left Defendants' employ.  If the extraordinary circumstances that explain their ignorance of their FLSA rights constituted the conditions of their employment with Defendants, those conditions ended when their employment ended.  *Id*. at 319-20 (holding that, even if the plaintiff had been subjected to "extraordinary circumstances" during her employment, those circumstances ended when she left defendant's employ).  The affidavits contain nothing to establish continuing "extraordinary circumstances" that would justify equitable tolling.  In addition, the affidavits do not set forth any facts that would establish Phulotsang's, Tobden's, or Dechen's diligence in pursuing their claims once they acquired knowledge of their rights.

As such, Phulotsang's, Tobden's, and Dechen's FLSA claims are subject to Rule 12(b)(6) dismissal on statute of limitations grounds.  Thus, treating Plaintiffs' filing of the first amended complaint as an implicit request for leave to file an amended complaint, the court recommends that Plaintiffs be denied such leave with respect to the FLSA claims by Phulotsang, Tobden, and Dechen.  However, the court recommends that the denial be without prejudice to Plaintiffs'

ability to seek leave to file an amended complaint that establishes a predicate for equitable tolling of the statute of limitations to the extent that the facts would support it.

### b.  FLSA Claims – Willfulness

Defendants next argue that Plaintiffs fail to adequately plead that the alleged FLSA violations were willful.  As set forth above, the court recommends that Plaintiffs be denied leave to file FLSA claims on behalf of Phulotsang, Tobden, and Dechen on futility grounds based on the statute of limitations.  The court goes on to address Defendants' argument regarding willfulness with respect to Gonpo's remaining FLSA claims, as well as Phulotsang's, Tobden's, and Dechen's FLSA claims in the event the district judge does not follow this court's recommendation and allows them to proceed with their claims.

"To survive a motion to dismiss for failure to state a claim, 'a complaint must contain sufficient factual matter … to "state a claim to relief that is plausible on its face."'" *Guadalupe-Báez v. Pesquera*, 819 F.3d 509, 514 (1st Cir. 2016) (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "A plausibility inquiry is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 53 (1st Cir. 2013) (quoting *Iqbal*, 556 U.S. at 679).  "In evaluating whether a complaint states a plausible claim, [a court] 'perform[s] [a] two-step analysis.'" *Saldivar v. Racine*, 818 F.3d 14, 18 (1st Cir. 2016) (third alteration in original) (quoting *Cardigan Mtn. Sch. v. N.H. Ins. Co.*, 787 F.3d 82, 84 (1st Cir. 2015)).

> At the first step, we "distinguish the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." *Cardigan Mtn. Sch.*, 787 F.3d at 84 (quoting *García–Catalán v. United States,* 734 F.3d 100, 103 (1st Cir. 2013)).  At step two, we must "determine whether the factual allegations are sufficient to support the reasonable inference that the defendant is liable." *Id.* (quoting

*García–Catalán*, 734 F.3d at 103) (internal quotation marks omitted).

*Id*.  "A motion to dismiss must focus not on whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support the claims."  *De Prins v. Michaeles*, 236 F. Supp. 3d 482, 487 (D. Mass. 2017) (citing *Mitchell v. Mass. Dep't of Corr.*, 190 F. Supp. 2d 204, 208 (D. Mass. 2002)).

Willfulness under the FLSA means that "'the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.'"  *Chao*, 493 F.3d at 35 (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).  Defendants argue that Plaintiffs' first amended complaint is insufficient because it contains only conclusory allegations of willfulness, which need not be credited.  Defendants rely on *Ochoa v. Pearson Educ., Inc*., for the proposition that, "[t]o satisfy the *Iqbal* pleading requirements, 'it is insufficient to merely assert that the employer's conduct was willful; the Court must look at the underlying factual allegations in the complaint to see if they could support more than an ordinary FLSA violation….'"  *Id*., No. 11-cv-1382 (DMC-JAD), 2012 WL 95340, at *3 (D.N.J. Jan. 12 2012) (quoting *Mell v. GNC Corp.*, No. 10-945, 2010 WL 4668966, at *8 (W.D. Pa. Nov. 9, 2010)).

The court disagrees with Defendants and concludes that the Plaintiffs' underlying factual allegations are sufficient to state a claim for willful violations of the FLSA.  In addition to alleging that Defendants acted willfully, Plaintiffs allege that Defendants failed to keep full and accurate records of their hours worked and wages paid and paid at least some of Plaintiffs' wages in cash, both of which could support a finding of willfulness (Dkt. No. 38 at ¶¶ 28, 35, 48, 60, 69).  *See Chao*, 493 F.3d at 35 (confirming the district court's finding of willfulness based, *inter alia*, on the employer's failure to keep accurate records of the time worked by employees and

33

payment of employees off the books); *Guarcas*, 2016 WL 7632844, at *4 (indicating that a finding of willfulness may be based on evidence of defendants' failure to keep time records and making of payments off the books); *Chen v. C&R Rock Inc.*, No. 14-cv-114-AJ, 2016 WL 1117416, at *6 (D.N.H. Mar. 22, 2016) (holding that the defendants failure to maintain adequate employee records was a "strong indication of willfulness"). Thus, Plaintiffs have adequately pled that Defendants' violations of the FLSA were willful.

c.   *26 U.S.C. § 7434 Claim*

Plaintiffs bring a claim against Defendants jointly and severally for violating 26 U.S.C. § 7434, which provides that "[i]f any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return." Defendants argue that the claim is subject to dismissal because it fails to meet the heightened pleading standards of Fed. R. Civ. P. 9(b) for fraud claims. Plaintiffs do not respond to Defendants' argument anywhere in their opposition to the motion to dismiss.

As Defendants correctly observe, fraud claims are subject to a heightened pleading standard as codified in Fed. R. Civ. P. 9(b). *Bryan Corp. v. ChemWerth, Inc.*, 911 F. Supp. 2d 103, 108 (D. Mass. 2012) (citing *N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 13 (1st Cir. 2009)). Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b)). "The particularity requirement means that a complaint must specify 'the time, place, and content of an alleged false representation.'" *United States ex. rel. Kelly v. Novartis Pharm. Corp.*, 827 F.3d 5, 13 (1st Cir. 2016) (quoting *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 194 (1st Cir.

34

1996)).  *See also Alt. Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 29 (1st Cir. 2004) (observing that claims for fraud typically must "specify the who, what, where, and when of the allegedly false or fraudulent representation").  "[T]he specificity requirement extends only to the particulars of the allegedly misleading statement itself."  *Rodi v. S. New Eng. Sch. of Law*, 389 F.3d 5, 15 (1st Cir. 2004) (citing *Educadores Puertorriqueños en Acción v. Hernández*, 367 F.3d 61, 66 (1st Cir. 2004)).  "The other elements of fraud, such as intent and knowledge, may be averred in general terms."  *Id*. (citing Fed. R. Civ. P. 9(b)).  The rule is designed "to apprise the defendant of fraudulent claims and of the acts that form the basis for the claim."  *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir. 1985).

The court agrees with Defendants that Plaintiffs' 26 U.S.C. § 7434 claim is inadequate. Nowhere in Plaintiffs' first amended complaint do Plaintiffs identify the information returns that are allegedly fraudulent, including who filed them, to whom the payments were purported to have been made, and for what years.  *Compare Bolling v. PP&G, Inc.*, No. WDQ-15-911, 2015 WL 9255330, at *7 (D. Md. Dec. 17, 2015) (denying the defendants' motion to dismiss where the complaint identified "the 'who' ([one of the defendants]), 'what' (false Form W-2s), 'when' (every year of employment), 'why' (to gain an unfair competitive advantage), and 'how' (underreporting the Plaintiffs' income)").  Accordingly, allowing Plaintiffs to file the 26 U.S.C. § 7434 claim as pled would be futile, and the court recommends that leave to file it be denied without prejudice to Plaintiffs' ability to move for leave to file a further amended complaint, if warranted, that establishes an adequate factual predicate for any such claim.

2.  State Law Claims

a.  *Supplemental Jurisdiction*

Before addressing the merits of Defendants' arguments on Plaintiffs' state law claims, the court must first ensure that it has supplemental jurisdiction over those claims.[11]  *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)) ([C]ourts . . . have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.").  Pursuant to 28 U.S.C. § 1367(a), district courts generally have supplemental jurisdiction "over . . . claims that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  In other words, "so long as the district court has original jurisdiction over a single claim, it may exercise supplemental jurisdiction over any additional claim that forms part of the same Article III case or controversy."  *Lindsay v. Gov't Emp.'s Ins. Co.*, 448 F.3d 416, 423 (D.D.C. 2006) (interpreting *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 559 (2005)).

The court here has original federal question jurisdiction over Gonpo's FLSA claims, so the question is whether Plaintiffs' state law claims form part of the same "case or controversy"

---

[11] Plaintiffs also invoke federal court jurisdiction over the state law claims on the basis of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2) (Dkt. No. 38 at ¶ 6).  "CAFA provides the federal district courts with 'original jurisdiction' to hear a 'class action' if the class has more than 100 members, the parties are minimally diverse, and the 'matter in controversy exceeds the sum or value of $5,000,000.'"  *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013) (quoting 28 U.S.C. § 1332(d)(2), (d)(5)(b)).  Plaintiffs have not sufficiently alleged a factual basis for subject matter jurisdiction under CAFA.  Plaintiffs have not plead jurisdictionally significant facts regarding the citizenship of the parties or the amount in controversy, and they have plead that, upon information and belief, there are perhaps 40 members in the class, not over 100 (Dkt. No. 38 at ¶ 82).

within the meaning of 28 U.S.C. § 1367(a).  "State and federal claims are part of the same 'case

or controversy' for purposes of section 1367(a) if they '"derive from a common nucleus of

operative fact" or "are such that [they] . . . would ordinarily be expected to [be] tr[ied] . . . in one

judicial proceeding."'"  *Allstate Interiors & Exteriors, Inc. v. Stonestreet Const., LLC*, 730 F.3d

67, 72 (1st Cir. 2013) (alterations in original) (quoting *Penobscot Indian Nation v. Key Bank of

Me.*, 112 F.3d 538, 564 (1st Cir. 1997)).

> Supplemental jurisdiction has thus been exercised "'where the
> facts underlying the federal and state claims substantially overlap
> or where presentation of the federal claim necessarily brings the
> facts underlying the state claim before the court.'"  *McConnell v.
> Costigan,* No. 00 Civ. 4598(SAS), 2000 WL 1716273, at *4
> (S.D.N.Y. Nov. 16, 2000) (alterations omitted) (quoting
> *Lyndonville Sav. Bank & Trust Co. v. Lussier,* 211 F.3d 697, 704
> (2d Cir.2000)).  Conversely, supplemental jurisdiction should not
> be exercised "when the federal and state claims rest[ ] on
> essentially unrelated facts."  *Lyndonville Sav. Bank & Trust Co.,*
> 211 F.3d at 704.

*Chaluisan v. Simsmetal East LLC*, 698 F. Supp. 2d 397, 401 (S.D.N.Y. 2010).  "[T]he inquiry is,

necessarily, a fact-intensive one that is unique to each case."  *Coyne v. Tr.'s of Dartmouth Coll.*,

No. 14-cv-517-SM, 2015 WL 1457900, at *2 (D.N.H. Mar. 30, 2015) (citing *Lyon v. Whisman*,

45 F.3d 758, 760 (3d Cir. 1995)).

    The court concludes that Gonpo's state law claims derive from the same common nucleus

of operative facts as his FLSA claims, but that Phulotsang's, Tobden's, and Dechen's proposed

state law claims do not derive from the same common nucleus of operative facts as Gonpo's

claims.  Gonpo's FLSA claims allege that Defendants violated the provisions of that statute by

failing to pay him the federal minimum wage for all of the hours he worked and by failing to pay

him overtime compensation for all of the hours he worked in excess of forty hours per week.

Gonpo's state law claims center on the same fundamental factual contentions that Defendants did

not pay him what he was promised and what he was owed. "These claims will necessarily involve, *inter alia*, testimony about his job responsibilities, the hours he worked, the hours for which he was paid, the amounts he was paid, [and] the record-keeping practices of the company . . . – the same facts as his federal claims." *Pacheco v. St. Luke's Emergency Assoc.'s P.C.*, 879 F. Supp. 2d 136, 144 (D. Mass. 2012) (holding that the plaintiff's state claims for breach of contract, breach of the implied covenant of good faith and fair dealing, misrepresentation, promissory estoppel, failure to pay wages under Mass. Gen. Laws. ch. 149, § 148, and tortious interference with contractual relations fell within the court's supplemental jurisdiction where the plaintiff was complaining of the same wrongs as in his FLSA claims). *See also Coyne*, 2015 WL 1457900, at *5 (holding that the plaintiff's state law claims for breach of contract and negligent infliction of emotional distress were sufficiently related to her FLSA claims to vest the court with supplemental jurisdiction). Thus, the court concludes that Gonpo's state and federal claims derive from a common nucleus of operative facts, and the court has supplemental jurisdiction over his state law claims.

Phulotsang's, Dechen's, and Tobden's state law claims stand on different ground. While Phulotsang, Dechen, and Tobden would have no federal claims in the case pursuant to this court's recommendations thus far, federal courts with federal question jurisdiction over at least one plaintiff can exercise supplemental jurisdiction over plaintiffs who cannot present a federal question, but who can assert sufficiently related state law claims. *Lindsay*, 448 F.3d at 423. Nonetheless, this court concludes that Phulotsang's, Dechen's, and Tobden's state law claims are not sufficiently related to Gonpo's FLSA claims. Phulotsang's, Dechen's, and Tobden's claims relate to whether they were paid what they were promised or owed, not whether Gonpo was. While there would likely be some overlap in the evidence, much of the evidence relating to

38

Phulotsang's, Dechen's, and Tobden's claims would be unrelated to Gonpo's claims, because their state law claims would be based on evidence about Phulotsang's, Dechen's, and Tobden's job responsibilities, as well as the hours they worked, the hours for which they were paid, and the amounts they were paid. Thus, the court concludes that Phulotsang's, Dechen's, and Tobden's state law claims do not share a common nucleus of operative facts with Gonpo's FLSA claims, and the court lacks supplemental jurisdiction to hear them.

Even if the district judge were to disagree with this court and conclude that all of Plaintiffs' state law claims derive from a common nucleus of operative facts such that the court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a), *see Coyne*, 2015 WL 1457900, at *5 (noting that "because the standard is general in character, reasonable minds could certainly differ as to its proper application to the specific facts presented"), such jurisdiction is discretionary under 28 U.S.C. § 1367(c). Pursuant to that section, "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if – (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). "The Supreme Court has explained that district courts must weigh several factors when deciding whether to exercise jurisdiction over pendent state law claims: assuming jurisdiction might promote 'judicial economy' and 'convenience,' but declining jurisdiction might promote 'comity' or afford the parties a 'surer-footed reading of applicable law' from state courts." *Eves v. LePage*, 842 F.3d 133, 146 (1st Cir. 2016) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)).

Here, in this court's view, 28 U.S.C. § 1367(c)(2) counsels in favor of the court declining

supplemental jurisdiction.  If the recommendations set forth herein are adopted, Phulotsang,

Dechen, and Tobden would only be asserting state law claims, and their state law claims would

substantially predominate over Gonpo's FLSA claims.  Those state law claims are more

numerous than Gonpo's federal claims and provide a far broader basis for relief.  The

Massachusetts claims present statutory, contract, tort, and equitable theories, while Gonpo's

federal claim invokes only the FLSA.  Thus, this court recommends that, to the extent the district

judge concludes that he would have supplemental jurisdiction over Phulotsang's, Tobden's, and

Dechen's state law claims, which is a close question, the district judge nevertheless decline to

exercise such jurisdiction under these circumstances and deny Plaintiffs leave to file an amended

complaint asserting state law claims on behalf of Phulotsang, Tobden, and Dechen, at least with

the case in its present posture.

The court goes on to address Defendants' arguments made in support of dismissal of the

state statutory and common law causes of action with respect to Gonpo's claims and in the event

the district judge does not follow this court's recommendation to deny leave to amend with

respect to Phulotsang's, Dechen's, and Tobden's claims.

### b.  FLSA Preemption

Defendants make a cursory argument that Plaintiffs' state statutory claims and common

law claims for breach of contract, breach of the covenant of good faith and fair dealing, quantum

meruit, unjust enrichment, equitable relief, and negligent misrepresentation are preempted by the

FLSA.

> The doctrine of federal preemption is rooted in the Supremacy
> Clause, which provides that "the Laws of the United States … shall
> be the supreme Law of the Land; and the Judges in every State

> shall be bound thereby, any thing in the Constitution or Laws of
> any State to the Contrary notwithstanding.

*SPGGC, LLC v. Ayotte*, 488 F.3d 525, 530 (1st Cir. 2007) (alteration in original) (quoting U.S.

Const. art. VI, cl. 2).  "[P]reemption arguments are generally divided into three categories."

*Weaver's Cove Energy, LLC v. R.I. Coastal Res. Mgmt. Council*, 589 F.3d 458, 472 (1st Cir.

2009) (citing *Fitzgerald v. Harris*, 549 F.3d 46, 52 (1st Cir. 2008)).  "The first, express

preemption, results from language in a statute revealing an explicit congressional intent to

preempt state law.  *Id*. (citing *Barnett Bank of Marion Cty., N.A., v. Nelson*, 517 U.S. 25, 31

(1996)).  "The second, field preemption, is that Congress may implicitly preempt a state law by

creating a pervasive scheme of regulation."  *Id*. (citing *Fitzgerald*, 549 F.3d at 52; *N. Natural

Gas Co. v. Iowa Utils. Bd.*, 377 F.3d 817, 823 (8th Cir. 2004)).  "The First Circuit has held that

there is no express or field preemption by the FLSA of state wage and hour laws."  *McCormick

v. Festiva Dev. Grp., LLC*, No. 09-365-P-S, 2010 WL 582218, at *8 n.7 (D. Me. Feb. 11, 2010)

(citing *Maccabees Mut. Life Ins. Co. v. Perez-Rosado*, 641 F.2d 45, 46 (1st Cir. 1981)).

> The third category is conflict preemption.  In this category, state
> law is "pre-empted to the extent it actually conflicts with federal
> law, that is, when compliance with both state and federal law is
> impossible, or when the state law stands as an obstacle to the
> accomplishment and execution of the full purposes and objectives
> of Congress."

*Weaver's Cove*, 589 F.3d at 472-73 (quoting *Fitzgerald*, 549 F.3d at 53).  The First Circuit has

"has not addressed the question of whether there is conflict preemption of parallel state-law wage

and hour claims."  *McCormick*, 2010 WL 582218, at *8 n.7.  Defendants' argument falls within

the third category, and, in particular, of the "obstacle" variety, since Defendants have not argued

that compliance with both state and federal law is impossible.

Defendants argue that Plaintiffs' state statutory claims and common law claims are preempted because they "are based on the same core facts as are [P]laintiffs' FLSA claims" (Dkt. No. 48 at 5).  For support, Defendants rely on three cases from outside of the First Circuit in which the courts held that, if a plaintiff's common law claims are duplicative of facts alleged in support of the plaintiff's FLSA claims, the common law claims are preempted by the FLSA.  *See Anderson v. Sara Lee Corp.*, 508 F.3d 181, 193 (4th Cir. 2007) (holding that the FLSA preempted state law claims for breach of contract, negligence and fraud that were framed in the complaint as being explicitly dependent on proof of a violation of the FLSA); *Eagle v. Freeport-McMoran, Inc.*, No. 2:15-CV-00577-MV-SMV, 2016 WL 7494277, at *3-4 (D.N.M. May 26, 2016) (dismissing the plaintiff's claim for breach of the implied covenant of good faith and fair dealing based on the defendant's alleged failure to pay "overtime as required by the FLSA" as preempted by the FLSA); *Kelly v. Borough of Union Beach*, No. 10-4124 (AET), 2011 WL 551170, at *3 (D.N.J. Feb. 8, 2011) (dismissing the plaintiff's common law claims for breach of contract, breach of the implied covenant of good faith and fair dealing, tortious interference with economic advantage, unjust enrichment, and equitable estoppel which were based on the same facts as the plaintiff's FLSA claims).  Defendants also rely on a statement from the First Circuit in *Román v. Maietta Constr. Inc.*, 147 F.3d 71 (1st Cir. 1998), that "the FLSA is the exclusive remedy for enforcement of rights created under the FLSA."  *Id.*, 147 F.3d 71, 76 (1st Cir. 1998).

An examination of Plaintiffs first amended complaint reveals that, contrary to Defendants' contention, the majority of the claims for which Defendants seek dismissal on preemption grounds are not duplicative of Plaintiffs' FLSA claims.  The FLSA mandates only that covered workers be paid a minimum wage for forty hours of work per week, 29 U.S.C. § 206(a)(1), and that they receive overtime wages for more than forty hours (unless they hold an

executive, administrative, or professional position), *id.* at §§ 207(a)(1), 213(a)(1). *See also*

*Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 116 (2d Cir. 2013). Plaintiffs'

FLSA claims encompass both minimum and overtime wage violations. In contrast, Plaintiffs'

claims under the Massachusetts Wage Act, Mass. Gen. Laws ch. 149, §§ 148, 150, are based on

Defendants' alleged failure to pay Plaintiffs all of their wages on a timely basis as required by

the statute, including those wages that were paid late and those that were never paid at all.[12]

There is no parallel claim under the FLSA for the untimely payment of wages, nor is there a

claim for unpaid "straight time" wages, i.e. unpaid wages for non-overtime hours at an

employee's regular rate of pay. *Eagle*, 2016 WL 7494277, at *4 (citing *Lundy*, 711 F.3d at 115)

(additional citations omitted). Thus, Plaintiffs' Mass. Gen. Laws ch. 149, § 148 claims are not

based on the same facts as Plaintiffs' FLSA claims and are not preempted.

Plaintiffs' claims for breach of contract and breach of the implied covenant of good faith

and fair dealing are premised on Defendants' alleged failure to pay Plaintiffs for all of the hours

Plaintiffs worked at the rates which Defendants promised, rates which were significantly higher

than the federal minimum wage. *See* 29 U.S.C. § 206. Plaintiffs do not allege any agreement to

be paid overtime wages. Thus, Plaintiffs' contract claims are for unpaid "straight time" at the

promised rates, for which, again, the FLSA does not provide a remedy. *Eagle*, 2016 WL

7494277, at *4 (citing *Lundy*, 711 F.3d at 115) (additional citations omitted). Accordingly,

Plaintiffs' contract related claims for "straight time" do not duplicate their FLSA claims and are

---

[12] Section 148 requires "[e]very person having employees in his service [to] pay weekly or bi-weekly each such employee the wages earned by him to within six days of the termination of the pay period during which the wages were earned if employed for five or six days in a calendar week . . . ." Mass. Gen. Laws ch. 149, § 148. Section 150 of that chapter provides that an employer who violates section 149 is liable for triple damages, as well as reasonable attorneys' fees and costs. *Id.* at § 150.

not preempted.  *See Eagle*, 2016 WL 7494277, at *4 (allowing the plaintiff's common law claim for breach of the implied covenant of good faith and fair dealing with respect to unpaid straight time to proceed).   Plaintiffs' claims for unjust enrichment and quantum meruit are alternative equitable theories of recovery and, so, too, are not duplicative of the FLSA claims.  Finally, Plaintiffs' claims for negligent misrepresentation and equitable relief in the form of an accounting are not duplicative of any relief available under the FLSA and, thus, are not preempted.

Plaintiffs' claims which are based on the same core facts as Plaintiffs' FLSA claims are the Massachusetts Minimum Fair Wage Law claims for unpaid minimum wages, Mass. Gen. Laws ch. 151, §§ 1, 20, and for unpaid overtime wages, *id*. at §§ 1A, 1B.  These claims are protected by the FLSA's "savings clause," which "plainly states that it does not preempt state law remedies that are more generous than those provided by the FLSA."  *Eagle*, 2016 WL 7494277, at *3 (citing 29 U.S.C. § 218(a) ("""No provision of this chapter or of any order thereunder shall excuse noncompliance with any … State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter or a maximum workweek lower than the maximum workweek established under this chapter …."""")). "Congress explicitly contemplated the coexistence of federal and state wage and hour laws and remedies, essentially setting a floor that states were free to exceed."  *McCormick*, 2010 WL 582218, at *6.  Massachusetts does provide a more generous remedy, insofar as it provides for a higher minimum wage, *compare* Mass. Gen. Laws ch. 151, § 1 *with* 29 U.S.C. § 206, and for the recovery of treble, as opposed to double, damages for violation of its mandates, *compare* Mass. Gen. Laws ch. 151, § 20, *with* 29 U.S.C. §216(b).  Thus, Plaintiff's Massachusetts Minimum Fair Wage Law claims are not preempted.

44

Before leaving this issue, the court addresses Plaintiff's reliance on *Román*.  This court

agrees with the District of Maine's reading of *Román* in *Bolduc v. Nat'l Semiconductor Corp.*, 35

F. Supp. 2d 106 (D. Me. 1998).  What the *Román* court held is "that a plaintiff is not entitled to a

double recovery when he pleads both federal and state claims for the same overtime pay.  It did

not hold that a claim made for overtime under the FLSA precludes a claim for overtime under

state law."  *Bolduc*, 35 F. Supp. 2d at 117.  While Plaintiffs may not be able to recover under

both the FLSA and the Massachusetts Minimum Fair Wage Law for the same losses, Plaintiffs

are "entitled to pursue claims under both state and federal law to vindicate the same right unless

the federal law preempts the state claim," *id*., which it does not.  Accordingly, this court

recommends that Defendants' argument that the FLSA preempts Plaintiffs' claims under state

statutory and common law be rejected.

        *c.   Failure to Plausibly Plead State Statutory Causes of Action*

Defendants next argue that Plaintiffs fail to plausibly plead statutory causes of action

under the Massachusetts Wage Act, Mass. Gen. Laws ch. 149, §§ 148 *et seq.*, and the

Massachusetts Minimum Fair Wage Law, Mass. Gen. Laws ch. 151, §§ 1 *et. seq.*[13]  The court

disagrees.

---

[13] In their motion to dismiss, Defendants also assert a statute of limitations defense to
Phulotsang's, Tobden's, and Dechen's claims under the Massachusetts Wage Act and
Massachusetts Minimum Fair Wage Law (Dkt. No. 47 at 1), both of which include a three year
limitations period.  *See* Mass. Gen. Laws ch. 158, § 150; Mass. Gen. Laws ch. 151, § 20A.
However, Defendants do not argue the issue anywhere in their supporting memorandum of law
(Dkt. No. 48).  The court is disinclined to recommend that Phulotsang, Tobden, and Dechen be
denied leave to assert these claims on statute of limitations grounds in the absence of briefing by
the parties on the issue of equitable tolling of state law claims, which, while it parallels federal
law in many ways, also bears a number of distinctions that could be of significance to the case at
bar.  *Wanshen Li v. MW South Station, Inc.*, No. 15-12961-FDS, 2017 WL 2407256, at *8 (June
2, 2017).

As set forth above, Mass. Gen. Laws ch. 149, § 148 requires "[e]very person having employees in his service [to] pay weekly or bi-weekly each such employee the wages earned by him to within six days of the termination of the pay period during which the wages were earned if employed for five or six days in a calendar week . . . ."  Mass. Gen. Laws ch. 149, § 148. Section 150 of that chapter provides that an employer who violates section 149 is liable for triple damages, as well as reasonable attorneys' fees and costs.  *Id*. at § 150.   Plaintiffs have alleged that Defendants regularly violated the act by not paying them in a timely manner.   The first amended complaint alleges that Plaintiffs all regularly worked 57 hours each week, but were consistently paid on a monthly basis and for less than the hours they actually worked (Dkt. No. 38 at ¶¶ 32-33, 35, 43-44, 47, 52-53, 60, 64-65, 68-69).   Plaintiffs allege that Gonpo and Phulotsang were paid for only sixty hours per month, that Dechen was compensated for only between twenty and forty hours per week, and that Tobden was never fully compensated for his hours worked.   These allegations are sufficient to state a claim for untimely payment under the Massachusetts Wage Act, both with respect to the payment of wages on a monthly basis, rather than weekly or bi-weekly, and with respect to the wages that are alleged never to have been paid at all.

The Massachusetts Minimum Fair Wage Law requires employers to pay employees a statutory minimum hourly wage, Mass. Gen. Laws ch. 151, § 1, and to pay employees compensation for employment in excess of forty hours a week at a rate of one-and-one-half times their regular rate of pay, *id*. at § 1A.   The current statutory minimum wage is $11.00 per hour. *Id*. at § 1.   This is an increase from $10.00 per hour from January 1, 2016 to December 31, 2016, $9.00 per hour from January 1, 2015 through December 31, 2015, and $8.00 per hour from January 1, 2008 to December 31, 2014.   Employers who violate the minimum wage or overtime

requirements are liable for treble damages, as well as reasonable attorneys' fees and costs. *Id.* at

§§ 1B, 20.  Plaintiffs have alleged that Defendants violated the Minimum Fair Wage Law in both

manners, by paying them less than the statutory minimum wage and by not paying them one-

and-one-half times their regular rate of pay for the hours they worked over forty in a given

workweek.  Specifically, Plaintiffs have alleged that they were not paid at all for the majority of

the hours they worked, let alone paid a minimum wage, and that, despite regularly working 57

hours per week, they were not paid at a rate of one-and-one-half times their regular rate of pay

for the hours they worked over forty (Dkt. No. 38 at ¶¶ 32-33, 35-37, 43-44, 47, 49-50, 52-53,

60-62, 64-65, 68, 70-71).  These allegations are sufficient to state a claim.  The fact that

Plaintiffs were promised rates of pay ranging from $9.00 to $14.00 per hour, i.e. rates that

exceeded the statutory minimum wage, does not alter this analysis given the clear allegations that

the promised hourly rates did not materialize.

> ### d.   *Failure to Plausibly Plead State Common Law Causes of Action*

Defendants argue that Plaintiffs fail to plausibly plead common law causes of action for

breach of contract, breach of the covenant of good faith and fair dealing, quantum meruit, unjust

enrichment, breach of implied contract, and negligent misrepresentation.

"The basic elements of a contract claim under Massachusetts law are familiar:  '[the]

plaintiff[ ] must prove that a valid, binding contract existed, the defendant breached the terms of

the contract, and the plaintiff[ ] sustained damages as a result of the breach.'"  *Young v. Wells*

*Fargo Bank, N.A.*, 717 F.3d 224, 232 (1st Cir. 2013) (alterations in original) (quoting *Brooks v.*

*AIG SunAmerica Life Assurance Co.*, 480 F.3d 579, 586 (1st Cir. 2007)).  Defendants contend

that Plaintiffs have not adequately alleged breach of contract because there are no allegations of

a formal employment contract between any of the Plaintiffs and Defendants.  Plaintiffs do not

need to allege a formal employment contract.  "'At a very minimum, an at-will employment relationship encompasses an agreement by the employee to perform specified work and an agreement by the employer to pay for the work performed.'"  *Manning v. Boston Med. Ctr. Corp.*, 725 F.3d 34, 57 (1st Cir. 2013) (quoting *Gasior v. Mass. Gen. Hosp.*, 846 N.E.2d 1133, 1137 n.7 (Mass. 2006)).  Plaintiffs have alleged that they had such a relationship with Defendants.  They worked as stonemasons/construction workers for Defendants, Defendants agreed to pay them certain hourly rates, and Defendants failed to pay them at their promised rates for all of the hours they worked.  This is sufficient.  Indeed, Defendants acknowledge the existence of an "informal contract arising from the fact of employment" (Dkt. No. 48 at 9-10).  These same allegations also support a claim for breach of the covenant of good faith and fair dealing implicit in all contracts in Massachusetts.  *See, e.g., Speakman v. Allmerica Fin. Life Ins. & Annuity Co.*, 367 F. Supp. 2d 122, 132 (D. Mass. 2005) (citing *UNO Restaurants, Inc. v. Boston Kenmore Realty Corp.*, 805 N.E.2d 957, 964 (Mass. 2004) ("A covenant of good faith and fair dealing is implied in every contract.").  Thus, Plaintiffs have adequately stated claims for breach of contract and breach of the implied covenant of good faith and fair dealing.

"The elements of . . . unjust enrichment '[i]n Massachusetts . . . are "unjust enrichment of one party and unjust detriment to the other party.""  *Depianti v. Jan-Pro Franchising Int'l, Inc.*, 39 F. Supp. 3d 112, 142 (D. Mass. 2014) (all but first alteration in original) (quoting *Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 412 F.3d 215, 234 n.7 (1st Cir. 2005)). "'[Q]uantum meruit is a species of unjust enrichment,'" *id*. at 142 (quoting *Bisbano v. Strine Printing Co.*, 737 F.3d 104, 108 n. 2 (1st Cir. 2013)), the elements of which are: "(1) the plaintiff conferred a reasonable benefit upon the defendants; (2) defendants accepted the services with the reasonable expectation of compensating the plaintiff; and (3) the plaintiff provided the services

with the reasonable expectation of receiving compensation.'" *Id*. at 141 (quoting *Backman v. Smirnov*, 751 F. Supp. 2d 304, 314 (D. Mass. 2010)). Plaintiffs' unjust enrichment and quantum meruit claims are based on the same factual allegations that underlie their claim for breach of contract, i.e. that they performed work for Defendants for which they were not paid, and the claims represent alternative equitable theories of recovery. "'[B]ecause procedural law allows alternative contentions, parties to a civil action involving . . . an array of factual and legal theories . . . may be allowed to defer choice at least until the late stages of proceedings in the trial court.'" *Id*. at 143 (all but first alteration in original) (quoting *Aetna Cas. Sur. Co. v. P & B Autobody*, 43 F.3d 1546, 1555 (1st Cir. 1994)). *See also Lass v. Bank of Am., N.A.*, 695 F.3d 129, 140 (1st Cir. 2012) (upholding the practice of pursuing, at least at the pleading stage, both legal and overlapping equitable claims). Thus, Plaintiffs' claims for unjust enrichment and quantum meruit are not subject to dismissal at this stage of the litigation.

An implied contract under Massachusetts law has the same elements as quantum meruit, set forth above. *Bolen v. Paragon Plastics, Inc.*, 747 F. Supp. 103, 106 (D. Mass. 1990). Plaintiffs' claim for breach of implied contract relates to Gonpo's alleged use of his personal motor vehicle to transport employees and materials to and from worksites at his own cost for Defendants' benefit.[14] The court concludes that Gonpo has sufficiently alleged breach of an implied contract for reimbursement of his motor vehicle costs and expenses. Accepting the allegations as true, as the court must at this stage, Gonpo conferred a benefit on Defendants under circumstances where Defendants should have had a reasonable expectation of reimbursing Gonpo and for which Gonpo could reasonably have expected to be reimbursed.

---

[14] There are no allegations that Phulotsang, Tobden, or Dechen owned motor vehicles that they used for Defendants' benefit.

Finally, the court turns to Plaintiffs' claim for negligent misrepresentation.  "'In order to recover for negligent misrepresentation[,] a plaintiff must prove that the defendant (1) in the course of his business, (2) supplie[d] false information for the guidance of others (3) in their business transactions, (4) causing and resulting in pecuniary loss to those others (5) by their justifiable reliance upon the information, and (6) with failure to exercise reasonable care or competence in obtaining or communicating the information.'"  *Savers Prop. & Cas. Ins. Co. v. Admiral Ins. Agency, Inc.*, 807 N.E.2d 842, 851 (Mass. App. Ct. 2004) (quoting *Nota Constr. Corp. v. Keyes Assocs.*, 694 N.E.2d 401, 405 (Mass. App. Ct. 1998)).  In the first amended complaint, Plaintiffs allege that, "[i]n the course of business, Defendants supplied Plaintiffs with false information to guide Plaintiffs in the parties' business transactions upon which Plaintiffs justifiably relied," "Defendant [sic] failed to exercise reasonable care or competence in communication [sic] the information to Plaintiffs," and, "[a]s a direct and proximate result of Defendant's [sic] conduct, Plaintiffs suffered economic damages in an amount to be determined at trial" (Dkt. No. 38 at ¶¶ 129-132).  These are boilerplate allegations devoid of factual enhancement, and, therefore, Plaintiffs' claims for negligent misrepresentation are subject to dismissal for failure to state a claim.  In opposing the motion to dismiss, Plaintiffs argue that they have sufficiently stated a claim because "[h]ere, Defendants (1) in the course of hiring Plaintiffs as employees, (2) represented that they would receive $9.00 per hour with a one dollar per hour wage increase per year, (3) thereby inducing Plaintiffs to come work for Defendants as well as live on their property (4) causing a monetary loss when Defendants' promises were not met ….

(5) Plaintiffs relied upon this information in making their decision to immigrate to the United States and Massachusetts specifically due to a lack of alternative options, but (6) Defendants did not provide Plaintiffs with the information necessary to know that they weren't receiving the

wages they were owed, in particular information regarding minimum wages laws and overtime"
(Dkt. No. 53 at 15).  None of this argument is supported by allegations in the first amended
complaint, most significantly the suggestion that Defendants' representations regarding the
wages Plaintiffs would be paid had any influence on Plaintiffs' decisions to immigrate to the
United States.  Therefore, Plaintiffs have failed to state a claim for negligent misrepresentation.

### 3.  Summary

The court recommends that Plaintiffs be denied leave to file an amended complaint
asserting FLSA claims by Phulotsang, Tobden, and Dechen because their claims are barred by
the statutes of limitations, and Plaintiffs fail to sketch a factual predicate in the first amended
complaint that would provide a basis for equitable tolling.  The court further recommends that
Plaintiffs be denied leave to file their amended complaint asserting a 26 U.S.C. § 7434 claim
because Plaintiffs have failed to state a claim upon which relief can be granted.   The court next
recommends that Plaintiffs be denied leave to file state law claims on behalf of Phulotsang,
Dechen, or Tobden because the court lacks supplemental jurisdiction where their claims are not
part of the same case or controversy as Gonpo's FLSA claims, or, to the extent that the district
judge would conclude that they are part of the same case or controversy, the court should
nevertheless exercise its discretion to decline supplemental jurisdiction.  Thus, as its bottom line,
the court recommends that Plaintiffs be denied leave to file the proposed amended complaint
insofar as it seeks to assert federal or state law claims on behalf of Phulotsang, Dechen, or
Tobden.  Finally, the court recommends that Gonpo be denied leave to file a claim for negligent
misrepresentation for failure to state a claim, but be granted leave to file the amended complaint
insofar as it asserts FLSA claims, claims under the Massachusetts Wage Act, Mass. Gen. Laws
ch. 149, §§ 148 *et seq.*, and the Massachusetts Minimum Fair Wage Law, Mass. Gen. Laws ch.

151, §§ 1 *et. seq*., and for breach of contract, breach of the implied covenant of good faith and

fair dealing, quantum meruit, unjust enrichment, breach of implied contract, and for equitable

relief in the form of an accounting.

### D.  Motion for Conditional Certification

Gonpo filed a motion for conditional certification and for court facilitation of notice of a

collective FLSA action pursuant to 29 U.S.C. § 216(b).  In the motion, Gonpo asks the court to

(1) grant collective action status under the FLSA, 29 U.S.C. § 216(b); (2) order Defendants to

produce a Microsoft Excel data file containing various contact information and dates of

employment for those individuals who have worked for Defendants as non-managerial

employees between September 27, 2013 and the date the court decides the motion; (3) authorize

notice of the matter to be sent to members of the putative class; (4) authorize equitable tolling of

the statute of limitations pending the expiration of the opt-in period; and (5) order Defendants to

post the proposed notice in conspicuous locations at the location where the prospective collection

action members worked or are now working.

### 1.  Class Certification Under the FLSA

Pursuant to 29 U.S.C. § 216(b), employees not paid as required by the FLSA may sue on

behalf of themselves and "other employees similarly situated."  *Id*.  Unlike class actions under

Fed. R. Civ. P. 23, the FLSA "establishes an 'opt-in' scheme whereby potential plaintiffs must

affirmatively notify the court of their intention to be a party to the class action in order to be

bound by and benefit from it."  *Kane v. Gage Merch. Servs., Inc.*, 138 F. Supp. 2d 212, 214 (D.

Mass. 2001).  *See also* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such

action unless he gives his consent in writing to become such a party and such consent is filed in

the court in which such action is brought.").  The FLSA does not provide for court-ordered

notice of a pending collective action, but the Supreme Court has held that district courts have

discretion to implement 29 U.S.C. § 216(b) by facilitating notice to potential plaintiffs. *Prescott*

*v. Prudential Ins. Co.*, 729 F. Supp. 2d 357, 362-63 (D. Me. 2010) (citing *Hoffman-La Roche*

*Inc. v. Sperling*, 493 U.S. 165, 165 (1989)). *See also Roberts*, 2017 WL 1217114, at *2

("'[N]othing in FLSA . . . requires certification, it is instead a recognized case management tool

for district courts to employ in appropriate cases to facilitate the sending of notice to potential

class members.'" (first alteration in original) (quoting *Heitzenrater v. OfficeMax, Inc.*, No. 12-

CV-900S, 2014 WL 448502, at *1 (W.D.N.Y. Feb. 4, 2014))). "The district court may facilitate

this notice by allowing discovery of the names and addresses of potential plaintiffs, by

authorizing a notice for plaintiff's counsel to send to the potential plaintiffs, or by some other

appropriate action." *Felix De Asencio v. Tyson Foods, Inc.*, 130 F. Supp. 2d 660, 662-63 (E.D.

Pa. 2001) (citing *Hoffman-La Roche*, 493 U.S. at 169).

   "A class may be conditionally certified and notified of the pendency of an action only if

the putative class members are 'similarly situated' with the named plaintiffs." *O'Donnell v.*

*Robert Half Int'l, Inc.*, 429 F. Supp. 2d 246, 249 (D. Mass. 2006) (citing *Kane*, 138 F. Supp. 2d

at 214). "Neither the FLSA nor the First Circuit has established a standard that district courts

must apply in determining whether potential plaintiffs are 'similarly situated,' but courts in this

Circuit have predominantly applied a two-tier approach." *Roberts*, 2017 WL 1217114, at *2

(citing *Trezvant v. Fid. Emp'r. Servs. Corp.*, 434 F. Supp. 2d 40, 43 (D. Mass. 2006) ("[T]he

majority of courts addressing this issue in the First Circuit have adopted the two-tier approach.").

*See also Torrezani v. VIP Auto Detailing, Inc.*, 318 F.R.D. 548, 557-58 (D. Mass. 2017)

(applying the two-tier approach even though discovery had been completed); *Shucks Maine*

*Lobster*, 2016 WL 6304674, at *6 ("The general practice of district courts within the First Circuit

– including this Court – is to employ a two-tiered approach to the certification of collective

actions under the FLSA."); *Lapan v. Dick's Sporting Goods, Inc.*, No. 13-11390, 2014 WL

4206212, at *1 (D. Mass. Aug. 20, 2014) ("After careful consideration, the court sees no reason

to blaze new trails or to revisit the two-tier approach laid out by Judge Young in *Trezvant* . . . .");

*Perez v. Prime Steak House Rest. Corp.*, 959 F. Supp. 2d 227, 230 (D.P.R. 2013) ("'The general

practice of district courts within the First Circuit . . . has been to adopt a 'two-tiered' approach to

certification of collective actions under the FLSA.'" (quoting *Johnson v. VCG Holding Corp.*,

802 F. Supp. 2d 227, 233 (D. Me. 2011))).  This court will apply the two-tier approach generally

accepted in this Circuit.

> Under the two-tiered framework, "[t]he first stage determines
> whether notice should be given to potential collective action
> members and usually occurs earlier in a case, before substantial
> discovery, 'based only on the pleadings and any affidavits which
> have been submitted.'"  *Prescott*, 729 F. Supp. 2d at 363–64
> (quoting *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218
> (11th Cir. 2001)).  The second stage occurs at the completion of
> discovery when the employer may move to decertify the class
> action.  *Id*.  At the second stage, the Court is tasked with making "a
> factual determination as to whether there are similarly-situated
> employees who have opted in."  *Id*. at 364 (quoting *Sandoz v.
> Cingular Wireless LLC*, 553 F.3d 913, 916 n. 2 (5th Cir. 2008)).

*Johnson*, 802 F.Supp.2d at 233–34.  If the court finds that the opt-in plaintiffs are not "similarly

situated," the court can then de-certify the class and dismiss the opt-in plaintiffs' claims without

prejudice.  *Roberts*, 2017 WL 1217114, at *3.  "If, on the other hand, the court finds that the

putative class members are 'similarly situated,' it permits the case to go to trial as a class action."

*Kane*, 138 F. Supp. 2d at 214 (citing *Reeves v. Alliant Techsystems, Inc.*, 77 F. Supp. 2d 242, 247

(D.R.I. 1999)).  "'At th[e] [second] stage, courts consider such factors as: 1) the disparate factual

and employment settings – e.g. whether plaintiffs were employed in the same corporate

department, division, and location; 2) the various defenses available to [the] defendant which

appear to be individual to each plaintiff; and 3) fairness and procedural considerations.'"
*Roberts*, 2017 WL 1217114, at *3 (second alteration in original) (quoting *Trezvant*, 434 F. Supp.
2d at 45)).  "[T]he two-stage process allows the Court to have the benefit of knowing who has
opted in when determining whether the plaintiffs are actually similarly situated and if the named
plaintiffs are representative."  *Id.*

This case is at the notice stage.  "Only a preliminary finding of 'similarly situated'
plaintiffs is necessary to authorize notice to potential class members."  *Trezvant*, 434 F. Supp. 2d
at 43.  "Thus, the Plaintiffs have 'the burden of showing a reasonable basis for [their] claim that
there are other similarly situated employees.'"  *Johnson*, 802 F. Supp. 2d at 234 (alteration in
original) (quoting *Prescott*, 729 F. Supp. 2d at 364).  "'Plaintiffs accomplish this via a minimal
factual showing that (1) there is a reasonable basis for crediting the assertion that aggrieved
individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant
respects given the claims and defenses asserted; and (3) those individuals want to opt in to the
lawsuit.'"[15]  *Id.* (quoting *Albanil v. Coast 2 Coast, Inc.*, Civil Action No. H-08-486, 2008 WL
4937565, at *6 (S.D. Tex. Nov. 17, 2008)).  *See also Prime Steak House Rest. Corp.*, 959 F.
Supp. 2d at 230-31 (requiring the plaintiffs to make the same showing).  "The burden is light.
Other courts have variously called it 'not particularly stringent,' 'fairly lenient,' 'flexible,' 'not
heavy,' and 'less stringent than that for joinder under Rule 20(a) or for separate trials under
42(b).'"  *Johnson*, 802 F. Supp. 2d at 234 (quoting *Prescott*, 729 F. Supp. 2d at 363-64).

---

[15] With regard to the third factor, not all courts have required named plaintiffs to identify the
names of other potential class members who are interested in joining the lawsuit in order to
secure conditional certification.  *See Shucks Maine Lobster*, 2016 WL 6304674, at *6 (noting a
split among "[d]istrict courts around the Country – and within the First Circuit" on this issue).
However, this court will apply this factor based on the reasoning set forth in the discussion
regarding it, *infra*.

However, while "the determination is made using a fairly lenient standard, the standard is not 'invisible.'" *Torrezani*, 318 F.R.D. at 557 (quoting *Houston v. URS Corp.*, 591 F. Supp. 2d 827, 831 (E.D. Va. 2008)).  "Rather, 'as a matter of sound case management' and to avoid 'a frivolous fishing expedition at the employer's expense,' courts should generally require a party moving for conditional certification to make 'a preliminary factual showing that there actually exists a similarly situated group of potential plaintiffs.'" *Id.* (quoting *Melendez Cintron v. Hershey Puerto Rico, Inc.*, 363 F. Supp. 2d 10, 18 (D.P.R. 2005)).

2. Analysis

*(a) Aggrieved Individuals Exist*

Under the first factor, Gonpo must make a minimal factual showing that there is a reasonable basis for crediting the assertion that aggrieved individuals exist.  *Johnson*, 802 F. Supp. 2d at 234.  The court concludes that Gonpo has met this initial burden.  Gonpo supports his motion for conditional certification with his own affidavit, as well as affidavits from Phulotsang, Tobden, and Dechen.[16]  All of the affiants describe Defendants' practice of failing to pay them even minimum wages for all of the hours they worked and failing to pay them overtime for the hours they worked in excess of forty each week.  In addition, Gonpo's affidavit indicates that Defendants had up to thirteen employees at any given time and that, over the course of his employment, he got to know a total of twenty-five other employees.  Tobden similarly indicates in his affidavit that Defendants employed up to thirteen individuals at a time, while Phulotsang avers that it was twelve.  Gonpo identifies some of the other employees by name, including opt-in plaintiffs Tobden, Phulotsang, and Dechen, as well as Fiodor Tahij, Pema Sirther, Sonam

---

[16] While Phulotsang's, Tobden's and Dechen's FLSA claims are time-barred, their affidavits are still of evidentiary value.

Gyaltsan, Tashi Pajlor, and Rechen Namgyal.  Phulotsang identifies an additional employee by

name, Darjey Thupten.  Finally, Gonpo, Phulotsang, Tobden, and Dechen all aver that they and

other employees would discuss their rates of pay, whether they had been paid late, and other

terms and conditions of their employment when they were together at the shop, during lunches at

worksites, in the company dormitories, or when traveling to or from worksites.  From these

conversations, they know that irregular payment was the norm and that no employees were paid

overtime.  These averments together provide a reasonable basis for crediting the assertion that

aggrieved individuals exist.

*(b) Aggrieved Individuals Are "Similarly Situated"*

Under the second factor, Plaintiffs must make a minimal factual showing that that those

aggrieved individuals are similarly situated in relevant respects given the claims and defenses

asserted.  *Johnson*, 802 F. Supp. 2d at 234.  "While the FLSA requires that members of a

collective action be 'similarly situated,' it does not define the term."  *Id*.  "Generally, however,

courts have found that 'similarly situated' employees have similar (not identical) job duties and

pay provisions, *Morgan v. Family Dollar Stores*, 551 F.3d 1233, 1259-60 (11th Cir. 2008)

(citations omitted), and are 'victims of a common policy or plan that violated the law,' *Comer v.*

*Wal-Mart Stores, Inc.*, 454 F.3d 544, 547 (6th Cir. 2006) (quoting *Roebuck v. Hudson Valley*

*Farms, Inc.*, 239 F. Supp. 2d 234, 238 (N.D.N.Y. 2002))."  *Prescott*, 729 F. Supp. 2d at 364.

This "'modest factual showing' of similar factual and legal characteristics," provides a "'basis to

conclude that questions common to a potential group of plaintiffs would predominate a

determination of the merits in [a] case."  *Trezvant*, 434 F. Supp. 2d at 45 (quoting *Mike v. Safeco*

*Ins. Co.*, 274 F. Supp. 2d 216, 220 (D. Conn. 2003)).

57

Here, Gonpo and opt-in plaintiffs Phulotsang, Tobden, and Dechen have averred that they were all stonemasons/construction workers, they all worked approximately fifty-five hours each week, none of them were paid for all of the hours they worked, and none of them were paid overtime.  They each also have averred that, based on conversations with other employees who worked at the same job sites, for the same hours, and for similar rates of pay, they know that none of these other employees were paid overtime.  Thus, it appears from the affidavits that the stonemasons/construction workers as a group suffered from a common policy or practice that violated the law.

If the evidence were limited to the Plaintiffs' affidavits, the court would conclude that Gonpo had satisfied the second prong.  However, the court also has before it Lama's affidavit, as well as the transcript of Gonpo's deposition.  Those materials demonstrate that Gonpo is currently incarcerated on charges that he sexually assaulted Lama's daughter, as a result of which he asserted his Fifth Amendment privilege against self-incrimination multiple times in refusing to answer questions at his deposition and lacks access to relevant evidentiary material because he is incarcerated.  These factors counsel against even a preliminary finding that Gonpo is "similarly situated" to other aggrieved individuals.  Gonpo likely will be subject to impeachment regarding his credibility and his motives in bringing the lawsuit that other aggrieved individuals would not confront.  Specifically, it is Defendants' contention that Gonpo is bringing the lawsuit in order to intimidate Lama so that the criminal charges are dropped.  In addition, Gonpo's assertion of the Fifth Amendment can prejudice him in the case at bar in a manner that would be inapplicable to other aggrieved individuals.  *See Green v. Cosby*, 177 F. Supp. 3d 673, 679 (D. Mass. 2016) (noting that a party who invokes the Fifth Amendment in response to civil discovery may be subject to an adverse inference that the withheld information

58

would have been unfavorable to that party and is prevented from adequately defending his position in the civil case).  Given these fairly unique circumstances, the court concludes that record does not support a preliminary finding that Gonpo is "similarly situated" to other aggrieved individuals.

### (c)  Similarly Situated Aggrieved Individuals Are Interested in Joining the Lawsuit

Under the third factor, Plaintiffs must make a minimal factual showing that similarly situated aggrieved individuals want to opt in to the lawsuit.  *Johnson*, 802 F. Supp. 2d at 234.

> One court explained:  "a plaintiff must do more than show the mere existence of other similarly situated persons, because there is no guarantee that those persons will actually seek to join the lawsuit.  And, if those other, similarly situated persons were to decline to opt in to the case, no purpose would have been served by 'certifying' a collective-action 'class' – the case ultimately would involve no one other than the plaintiff.  Furthermore, if an FLSA plaintiff were required to show only that other potential plaintiffs exist (rather than showing that those potential plaintiffs would actually seek to join the lawsuit) it would 'render preliminary class certification automatic, as long as the Complaint contains the magic words: "Other employees similarly situated."'"

*Id*. at 237 (quoting *Parker v. Rowland Express, Inc.*, 492 F. Supp. 2d 1159, 1165 (D. Minn. 2007)).  Thus, courts have considered it a requirement that plaintiffs demonstrate that putative class members are interested in joining the suit.  *O'Donnell*, 429 F. Supp. 2d at 250 (citations omitted) (denying conditional certification where the plaintiffs failed to demonstrate that any putative class members were interested in joining the suit).  This court will do so as well.

Here, Gonpo has identified three other aggrieved individuals who want to join the lawsuit, namely opt-in Plaintiffs Phulotsang, Tobden, and Dechen.  However, as set forth above, Phulotsang's, Tobden's, and Dechen's FLSA claims are time barred.  Gonpo has not shown that any individual whose FLSA claim would be timely is interested in joining the lawsuit.  No other

59

employee of Defendants has filed an opt-in notice while the motion for conditional certification has been pending.  Thus, Gonpo has not shown that other potential plaintiffs who can join the lawsuit would actually seek to do so.

Because Gonpo fails to meet his burden as to the second and third factors of a showing of other similarly situated employees, the court recommends that Gonpo's motion for conditional certification be denied.  However, the court recommends that the denial be without prejudice to Plaintiffs' ability to file a renewed motion should they be able to identify individuals who want to opt-in to the lawsuit who, unlike Gonpo, are similarly situated to other of Defendants' employees.

### E.  Motion for Equitable Tolling

Plaintiffs have filed a motion for equitable tolling seeking two categories of relief.  First, Plaintiffs seek to have the statute of limitations tolled for Phulotsang, Tobden, and Dechen to include the time each of them worked for Defendants.  Second, Plaintiffs seek to toll the statute of limitations to three years before the filing of the initial complaint in this action for all other employees of Defendants who may opt-in to the case.

The court has already addressed the issue of equitable tolling for Phulotsang, Tobden, and Dechen in the context of addressing Defendants' Rule 12(b)(6) motion to dismiss their FLSA claims on statute of limitations grounds.  As is set forth comprehensively in that section, the affidavits Plaintiffs have submitted fail to establish a factual predicate for equitable tolling. While Plaintiffs assert "excusable ignorance" as the basis for equitable tolling, the affidavits fail to demonstrate their lack of actual or constructive knowledge of their rights under the FLSA. Moreover, while Plaintiffs suggest that the "extraordinary circumstances" that stood in the way of the timely filing of their FLSA claims were the conditions of their employment with

Defendants, Plaintiffs affidavits fail to address the lengthy gaps from when they left Defendants'

employ to the time they filed their notices of written consent.  Thus, the court recommends that

Plaintiffs' motion for equitable tolling as to Phulotsang, Tobden, and Dechen be denied.  The

court further recommends that the motion for equitable tolling as to potential opt-in plaintiffs be

denied as premature.  "Because these persons have not yet opted-in to the case, the plaintiffs are,

in effect, asking for an advisory opinion, which the Court cannot issue."  *Tidd v. Adecco USA,*

*Inc.*, No. 07-11214-GAO, 2010 WL 996769, at *3 (D. Mass. Mar. 16, 2010) (citing *Cotter v.*

*City of Boston*, 323 F.3d 160, 173 (1st Cir. 2003) ("Article III's cases and controversies language

prohibits federal courts from issuing advisory opinions.  A court may not decide questions that

cannot affect the rights of litigants in the case before it." (internal quotation omitted)).

### III.   CONCLUSION

For the reasons set forth above, the undersigned recommends that:

(a)  Defendants' motions to dismiss on jurisdictional grounds pursuant to Fed. R. Civ. P.

12(b)(1) (Dkt. Nos. 34, 45) be denied;

(b)  Defendants' motion to dismiss based on the improper addition of claims and parties

(Dkt. No. 49) be denied;

(c)  Plaintiffs' filing of the first amended complaint without leave of court be treated as an

implicit request for leave to file an amended complaint and that Defendants' motion to dismiss

the first amended complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt.

No. 47) be treated as an opposition on futility grounds;

(d)  Plaintiffs be denied leave to file the amended complaint insofar as it sets forth claims

under the FLSA on behalf of Phulotsang, Tobden, and Dechen because their claims are time-

barred and they have not alleged a factual predicate in their complaint for equitable tolling;

(e)  Plaintiffs be denied leave to file the amended complaint insofar as it sets forth claims under 26 U.S.C. § 7434 because Plaintiffs fail to adequately state a claim;

(f)  Plaintiffs be denied leave to file the amended complaint insofar as it sets forth pendent state law claims by Phulotsang, Tobden, and Dechen because their state law claims are not so related to Gonpo's FLSA claims that they form part of the same case or controversy as required by 28 U.S.C. § 1367(a), or, to the extent that they are part of the same case or controversy, the court nevertheless should exercise its discretion to decline supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(2);

(g) Gonpo be denied leave to file the amended complaint insofar as it sets forth a claim for negligent misrepresentation because Gonpo fails to adequately state a claim;

(h) Gonpo be granted leave to file the amended complaint insofar as it sets forth FLSA claims, as well as claims under the Massachusetts Wage Act, Mass. Gen. Laws ch. 149, §§ 148 *et seq.*, and the Massachusetts Minimum Fair Wage Law, Mass. Gen. Laws ch. 151, §§ 1 *et. seq.*, and for breach of contract, breach of the implied covenant of good faith and fair dealing, quantum meruit, unjust enrichment, breach of implied contract, and for equitable relief in the form of an accounting;

(i)  Plaintiff's motion for conditional certification (Dkt. No. 22) be denied; and

(j)  Plaintiffs' motion for equitable tolling (Dkt. No. 62) be denied.[17]

---

[17] The parties are advised that under the provisions of Fed. R. Civ. P. 72(b) or Fed. R. Crim. P. 59(b), any party who objects to these findings and recommendations must file a further written objection with the Clerk of this Court **within fourteen (14) days** of the party's receipt of this Report and Recommendation.  The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection.  The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report of Recommendation.  *See* Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Scott v. Schweiker, 702

Dated: December 14, 2017                    /s/Katherine A. Robertson
                                            KATHERINE A. ROBERTSON
                                            U.S. Magistrate Judge

---

F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park
Motor Mart Inc. v. Ford Motor Co., 616 F.2d 603, 604 (1st Cir. 1980).  *See also* Thomas v. Arn,
474 U.S. 140, 154-55 (1985).  A party may respond to another party's objections within fourteen
(14) days after being served with a copy thereof.