UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JAMPA GONPO,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>SONAM'S STONEWALLS & ART, LLC *and*<br>SONAM RINCHEN LAMA,<br><br>　　　　Defendants. | Civil Action No. 16-40138-MGM |

MEMORANDUM AND ORDER REGARDING PLAINTIFF'S MOTION FOR
AWARD OF DAMAGES, TREBLE DAMAGES, PREJUDGMENT
INTEREST, ATTORNEYS' FEES, AND COSTS
(Dkt. No. 182)

April 1, 2021

MASTROIANNI, U.S.D.J.

I. INTRODUCTION

After a five-day trial, a jury returned a verdict consisting of special interrogatories in favor of

Plaintiff Jampa Gonpo for unpaid wages under the federal Fair Labor Standards Act (29 U.S.C. 201

*et seq.*, "FLSA") and Massachusetts wage statutes (Mass. Gen. Laws ch. 149, § 148; Mass. Gen. Laws

ch. 151, §§ 1, 1A). The parties agreed to special interrogatories that would be used as the basis to

calculate damages after trial. After conferring and finding they were unable to agree on the amount,

the parties briefed the issue of damages. In addition, Plaintiff has requested attorneys' fees and costs,

which Defendants have opposed. For the reasons discussed below, the court largely agrees with

Plaintiff's calculation of damages of $181,426.37. The court also awards $97,954.75 in attorneys' fees

and $8,285.94 in costs.

## II. DAMAGES

Defendants do not dispute the amount of lost pay of $51,217.00 calculated by Plaintiff. That number is the sum of $23,479.00 of unpaid minimum wages, an additional $15,336.00 of unpaid regular wages, and $12,402.00 of unpaid overtime wages. Defendants, however, dispute the addition of prejudgment interest and treble damages, also referred to as liquidated damages.

### A.    PREEMPTION AND ELECTION OF REMEDIES

The court first addresses whether federal law or state law applies as Defendants' arguments depend on applying federal law. The FLSA and Massachusetts wage statutes differ in significant ways. The FLSA requires an employee be paid a minimum hourly wage of $7.25/hour and one-and-a-half times the regular wage rate for any overtime worked. 29 U.S.C. §§ 206(a)(1)(C), 207. Massachusetts statutes also mandate a minimum hourly wage, which at $8/hour or $9/hour is higher than the federal minimum wage, Mass. Gen. Laws ch. 151, § 1[1]; 29 U.S.C. § 206(a)(1)(C) ($7.25/hour), and one-and-a-half times the regular wage rate for any overtime worked. Mass. Gen. Laws ch. 151, § 1A. Unlike the FLSA, Massachusetts laws also provides for recovery of wages that are not timely paid. Mass. Gen. Laws ch. 149, § 148.[2] In addition, state law provides for mandatory treble damages, as liquidated damages. Mass. Gen. Laws, ch. 149, § 150; *see Rosnov v. Molloy*, 952 N.E.2d 901, 904–05 (Mass. 2011) (discussing the legislative amendment to the treble damages

---

[1] Relevant to the claims of this case, the minimum wage was $8/hour in 2013 and 2014 and $9/hour in 2015. An Act Increasing the Minimum Wage, ch. 271, 2006 Mass. Acts 1138, secs. 2, 4; An Act Restoring the Minimum Wage and Providing Unemployment Insurance Reforms, ch. 144, 2014 Mass. Acts 312, 328, secs. 28, 77.

[2] Defendants argue the state statutes only allow injunctive relief for untimely wage payments, without citing supporting authority. In *Crocker v. Townsend Oil Co., Inc.*, the Supreme Judicial Court held that although the plaintiff was barred by the two-year statute of limitations of the overtime provisions of chapter 151, section 1A, the plaintiff could still assert claims for unpaid wages (i.e., untimely wages). 979 N.E.2d 1077, 1082 (Mass. 2012). The court held "in such instance, *recovery* is limited to uncompensated time worked at the regular rate. That is, if the two-year statute of limitations has elapsed, the employee is not entitled to the premium overtime rate under G.L. c. 151, § 1A." *Id.* (emphasis added). "Recovery" indicates monetary damages, not injunctive relief.

provision of section 150 that made clear treble damages are not discretionary). Finally, according to state law, prejudgment interest is added to the amount of lost wages and benefits at a rate of twelve per cent per annum. *George v. Nat'l Water Main Cleaning Co.*, 77 N.E.3d 858, 866 (Mass. 2017). "Accrual of prejudgment interest until final judgment discourages frivolous post-verdict motions by a losing defendant, accelerating payment of the debt owed to the plaintiff." *Tobin v. Liberty Mutual Insurance Co.*, 553 F.3d 121, 147–48 (1st Cir. 2009). A plaintiff can recover both prejudgment interest and treble damages, although the prejudgment interest is added only to the lost wages and benefits amount and not the treble damages portion. *Id.* This is in contrast with claims under the FLSA, which the Supreme Court has held bars recovery of prejudgment interest when an employee recovers double damages under 29 U.S.C. § 216(b). *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 715 (1945). While a good-faith defense to liquidated damages is available for FLSA claims, no such defense exists for the Massachusetts wage claims. *George*, 77 N.E.3d 858, 865 (Mass. 2017).

Defendants argue that Plaintiff's state-law claims are preempted under *Roman v. Maietta Constr., Inc.*, 147 F.3d 71, 76 (1st Cir. 1998). The court disagrees. The "*Roman* court held that a plaintiff is not entitled to a double recovery when he pleads both federal and state claims for the same overtime pay. It did not hold that a claim made for over overtime under the FLSA precludes a claim for overtime under state law." *Bolduc v. Nat'l Semiconductor Corp.*, 35 F. Supp. 2d 106, 117 (D. Me. 1998). *Roman* did not conduct a preemption analysis (nor the Alabama district court case cited by *Roman*). When the First Circuit has explicitly conducted that analysis, it has first held that there is no express or field preemption by the FLSA. *Maccabees Mut. Life Ins. Co. v. Perez-Rosado*, 641 F.2d 45, 46–47 (1st Cir. 1981); *Doctors Hosp., Inc. v. Silva Recio*, 558 F.2d 619, 621–24 (1st Cir. 1977). It particularly noted that the savings provision at section 218(a) of the FLSA contemplates state regulation. *Maccabees*, 641 F.2d at 46; *Doctors Hosp.*, 558 F.2d at 622. In addition, where state law provisions provided more protections or benefits to workers, the First Circuit held there was no

conflict and therefore no preemption. *Maccabees*, 641 F.2d at 47; *Doctors Hosp.*, 558 F.2d at 623. Based on that reasoning, the court finds Plaintiff's state-law claims are not preempted by the FLSA.

Since Plaintiff's state-law claims are not preempted, Plaintiff may elect the more advantageous remedy under state law. *Tobin*, 553 F.3d at 146; *see also Conetta v. Nat'l Hair Care Ctrs.*, 236 F.3d 67, 77–78 (1st Cir. 2001); *Doty v. Sewall*, 908 F.2d 1053, 1063 (1st Cir . 1990). Defendants arguments to the contrary are not persuasive. In *Wojtkowski v. Cade*, the First Circuit noted that because a general verdict including $6000 in damages was returned by the jury that did not separate the federal and state claims, "[w]e cannot tell to what extent, if any, the jury's awards of damages against the three officers were based on the state law claims." 725 F.2d 127, 129 (1st Cir. 1984). Here, the jury answered, in great detail, specific interrogatories regarding their findings of facts on how much Plaintiff worked and was paid. (App'x A to Jury Verdict; Dkt. No. 171-1.) Therefore, unlike in *Wojtkowski*, the breakdown of wage violations necessary for differential treatment under federal or state laws is clearly available.[3] Accordingly, Plaintiff is entitled to elect recovery under the state laws.

B.    PLAINTIFF'S TOTAL AWARD

Plaintiff's wage loss totaled $51,217.00. Assuming judgment is entered on the date of this memorandum and order, prejudgment interest at the rate of 12 percent per annum on $51,217.00 would be $27,775.37.[4] Mandatory treble damages amounts to $153,651.00. Plaintiff is entitled to $181,426.37 in damages.

---

[3] Moreover, with respect to the minimum wage violation, the jury answered the interrogatories by applying state law rates, as instructed by the court and unobjected to by Defendants.
[4] From September 27, 2016 to March 30, 2021 is 1645 days.  Prejudgment Interest = $51,217 * (1645/7/52 * 0.12) = $27,775.37. The Clerk's Office shall adjust this amount appropriately depending on the actual date that judgment is entered.

### III. FEES

"An employee so aggrieved who prevails in such an action . . . shall also be awarded the costs of the litigation and reasonable attorneys' fees." Mass. Gen. Laws 149, § 150. The relevant method for evaluating fees is the "lodestar" method, which involves the multiplication of a fair market rate for time reasonably spent preparing and litigating a case. *See Joyce v. Town of Dennis*, 720 F.3d 12, 26–27 (1st Cir. 2013). Considerations in the analysis include the nature of the case and issues, the time and labor required, the amount of damages involved, the result obtained, the experience reputation, and ability of the attorney, the usual price charged for similar services by other attorneys in the same area, and the amount of awards in similar cases. *Id.* No one factor is determinative and a factor-by-factor analysis is helpful but not required. *Berman v. Linnane*, 748 N.E.2d 466, 469 (Mass. 2001). Plaintiff has the burden of proving that his request for attorneys' fees (and costs) is reasonable. *Juan Juan Chen v. Wen Jing Huang*, No. 1684CV00756-BLS2, 2016 WL 4729307, at *1 (Mass. Sup. Ct. Sept. 7, 2016) (citing *Stowe v. Bologna*, 629 N.E.2d 304, 307 (1994), *abrogated on other grounds by Fabre v. Walton*, 802 N.E.2d 1030, 1032 (Mass. 2004)). If the court opts to make a substantial adjustment in the charges, it has a burden to spell out why. *U.S. v. Metropolitan Dist. Comm'n*, 847 F.2d 12, 18 (1st Cir. 1988).

### A.    RATE

With respect to reasonable hourly rates, a court may look to the prevailing rate in the attorney's community as well as that attorney's actual billing practices. *U.S. v. One Star Class Sloop Sailboat*, 546 F.3d 26, 40 (1st Cir. 2008) ("When a party recruits counsel from outside the vicinage of the forum court, that court may deem the 'relevant community' to be the community in which the lawyer maintains his or her principal office."); *Haddad v. Wal-Mart Stores, Inc. (No. 2)*, 920 N.E.2d 278, 282 (Mass. 2010) (noting the analysis begins with the average rates "in the attorney's community"); *see also Gross v. Sun Life Assurance Co. of Canada*, 880 F.3d 1, 23–24 (1st Cir. 2018) (noting the court

also has discretion to set reasonable hourly rates with reference to the forum market rather than the market in the attorney's location).

Plaintiff's counsels' proposed rates are as follows: John Troy at $550/hour, Aaron Schweitzer at $350/hour, George Byun at $350/hour, and Joseph Indelicato at $250/hour, all based in Flushing, New York (of the firm Troy Law, PLLC); and Rebecca Pontikes at $400/hour[5] and Bryn Sfetsios at $195/hour, both based in Boston, Massachusetts (of the firm Pontikes Law, LLC). In addition, Plaintiff proposes that Preethi Kilaru's rate is $200/hour and Maggie Huang's is $150/hour, both paralegals based in Flushing, New York.

Attorney Troy submitted a detailed affidavit regarding credentials and experience of these attorneys and paralegals. Both Plaintiff and Defendants also point to other cases Plaintiff's attorneys have litigated in New York and New Jersey, which have awarded a range in terms of hourly rates: $300 to $550 for Attorney Troy, $125 to $225 for Attorney Schweitzer, and $150 to $225 for Attorney Byun. Plaintiff cites the rates awarded in *Zhang v. New Beijing Wok, Inc.* (a case tried in 2018, with the fees decided in 2020) as average, representative awards. This court is not particularly familiar with New York rates for comparable attorneys, and as Plaintiff has not provided any other evidence supporting the requested hourly rates, such as affidavits, the court deems the rates from *Zhang* to be appropriate. Those hourly rates are $400 for Attorney Troy and $225 for Attorneys Schweitzer and Byun. Attorney Indelicato's hourly rate, which was not included in *Zhang*, will be $150. In addition, Paralegals Huang's and Kilaru's rate will be $100.[6]

With respect to Attorney Pontikes's hourly rate, Plaintiff filed an affidavit from Attorney

---

[5] There is a discrepancy regarding Pontikes's rate. Plaintiff states an hourly rate of $350/hour (Troy Aff. ¶ 32, Dkt. No. 183) and $400/hour (*id.* ¶ 85).

[6] As Plaintiff points out, courts do award paralegal fees as part of attorney's fees. *See, e.g.*, *Davis v. Footbridge Eng'g Servs., LLC*, No. 09-cv-11133-NG, 2011 WL 3678928, at *5 (D. Mass. Aug. 22, 2011); *Marrotta v. Suffolk County*, 726 F. Supp. 2d 1, 5–6 (D. Mass. 2010);

Kevin Merritt in support, who stated that $500/hour would be a reasonable rate for Pontikes. Attorney Troy's affidavit states that $350/hour is sought for Attorney Pontikes (Troy Aff. ¶ 32, Dkt. No. 183), although a later summary chart indicates $400/hour (*id.* ¶ 85). The court accepts an hourly rate of $400 for Attorney Pontikes and $195 for Attorney Sfetsios as reasonable.

B.    HOURS

In determining time reasonably spent on a matter, the court should consider the difficulty of the case and the results obtained. *Juan Juan Chen*, 2016 WL 4729307, at *6 (citing *Killeen v. Westban Hotel Venture, LP*, 872 N.E.2d 731, 738–39 (Mass. App. Ct. 2007). Hours may be reduced if time spent was "wholly disproportionate to the interests at stake." *Id.* (quoting *Killeen*, 872 N.E.2d at 739). "However, defendants may not complain that fees for work made necessary by their own litigation tactics are excessive in light of the results achieved." *Id.* (concluding that the plaintiff was entitled to recover fees for all aspects of the legal work provided, "even though that legal work ended up being far broader in scope than is typically needed to collect unpaid wages").

Plaintiff states the following hours were expended by his counsel and their staff: 146.84 hours by Attorney Troy, 28.50 hours by Attorney Pontikes, 32.77 hours by Attorney Byun, 209.77 hours by Attorney Schweitzer (who tried the case), 22.71 hours by Attorney Indelicato, 2.2 hours by Attorney Sfetsios, 21.08 hours by Paralegal Kilaru, and 20.52 hours by Paralegal Huang.

1.    *Travel Time*

Defendants objects to the hours billed for travel (Troy, 23.75 hours; Indelicato, 8.9 hours; and Schweitzer, 47.58 hours). "Travel is often a necessary incident of litigation, and an attorney's travel time may be reimbursed in a feed award." *Hutchinson ex rel. Julien v. Patrick*, 636 F.3d 1, 15 (1st Cir. 2011) (noting in a footnote that: "In this case, some travel was essential. The case was pending in the western division of the District of Massachusetts, sitting in Springfield, and the plaintiffs' lawyers were based in Boston (some 90 miles away).") Ordinarily, such time is calculated at an

hourly rate lower than that which applies to substantive labors. *Id.* ("[T]here is no hard-and-fast rule establishing what percentage of an attorney's standard billing rate is appropriate for travel time.). Plaintiff argues an attorney can recover the full rate if working while traveling, citing *In re Volkswagen and Audi Warranty Extension Litigation*, 89 F. Supp. 3d 155, 174 (D. Mass. 2015). However, Attorney Troy's contemporaneous time-keeping records do not provide any details as to the substantive work he may have accomplished while traveling. Plaintiff argues that the billing records show Attorney Troy was always accompanied by another attorney or a client when driving to and from Massachusetts and therefore he "could not do otherwise but discuss the case, plan, and strategize while traveling." (Pl.'s Reply 9–10, Dkt. No. 189.) The court is not persuaded by this argument to assume Attorney Troy spent every moment of travel working specifically on this case. Similarly, Plaintiff has not met his burden for Attorney Schweitzer's travel, which lacks supporting time-keeping records and is based solely on the argument that because Attorney Schweitzer typically traveled alone by train, he was reviewing documents or otherwise preparing himself on the case. (*Id.* at 9.) Nevertheless, the court acknowledges that travel was essential to this case given Plaintiff's attorneys were based in New York, as well as the fact Plaintiff was imprisoned at Franklin County jail during the pendency of this case. Therefore, the court will allow Plaintiff to recover for his attorneys' travel time at half the hourly rates set by the court. *See, e.g.*, *Maceira v. Pagan*, 698 F.2d 38, 40 (1st Cir. 1983) (approving a one-half rate for travel); *In re Volkswagen and Audi Warranty Extension Litigation*, 89 F. Supp. 3d 155, 174 (D. Mass. 2015) (noting a similar treatment for travel time). The result is a reduction of Attorney Troy's hours by 11.875 hours, Indelicato's by 4.45 hours, and Schweitzer's by 23.79 hours.

    2.    *Core versus Non-Core Work and Unsuccessful Claims*

Defendants argue next that Plaintiff's attorneys' time-keeping records do not delineate between core and non-core work, but do not provide specific examples nor suggest what an "across

the board fee reduction" should be. (D.'s Opp. 8, Dkt. No. 188.) Before further addressing the

point, the court notes that the core versus non-core work approach is just one discretionary way, as

opposed to the only way, for determining reasonable fees. *Showtime Enter. LLC v. Ammendolia*, 10-

40194-FDS, 2016 WL 1555685, at *8–*9 (D. Mass. 2016) (discussing *Matalon v. Hynnes*, 806 F.3d

627, 638–39 (1st Cir. 2015)).[7]

As a general matter, Plaintiff's attorneys' contemporaneous, detailed time records generally

appear appropriate. For example, the time-keeping records show that much of the tasks appropriate

for a secretary or paralegal were performed by Paralegals Huang or Kilaru. In addition, Attorney

Schweitzer, at his lower rate, tried the case alone. *See Mogilevsky v. Bally Total Fitness Corp.*, 311 F.

Supp. 2d 212, 217–18 (D. Mass. 2004) ("[A] court must not permit an attorney to recover his

'standard hourly rate . . . for performing tasks appropriate to either a less experienced lawyer or a

secretary or paralegal." (quoting *McMillan v. Mass. Soc. for Prevention of Cruelty to Animals*, 140 F.3d 288,

308 (1st Cir. 1998))). In general, the case included a somewhat moderate amount of complexity

given the possibility of proceeding as a class action, and the issue of a concurrent criminal case

involving Plaintiff and Defendants. And Plaintiff's counsel was very successful in litigating Plaintiff's

wage claims, as reflected in the amount of damages arising out of the jury's verdict. As such, the

court generally does not find there to have been excessive hours spent on a particular task or

---

[7] "A court determining a fee award may distinguish between 'core' and 'non-core' legal work 'to prevent attorneys from earning their regular lawyers' fees for work that could be performed by a less skilled employee.' . . . Core work includes 'legal research, writing of legal documents, court appearances, negotiations with opposing counsel, monitoring, and implementation of court orders.' . . . Non-core work includes simple or administrative tasks such as letter writing and telephone conversations." *Showtime Enter.*, 2016 WL 1555685, at *8. Alternatively, some courts have reasoned "that once the appropriate hourly rate and number of hours reasonably expended are determined, the lodestar calculation will yield a presumptively correct result and that additional tinkering merely serves to double count some factors." *Id.* (quoting *Dixon v. Int'l Broth. of Police Officers*, 434 F. Supp. 2d 73, 86 (D. Mass. 2006)). In some cases, employing "an across-the-board rate cut, rather than using two-tiered rates" is within the court's sound discretion. *Id.* at *9 (quoting *Matalon*, 806 F.3d at 639).

duplicative work or overstaffing, and Defendants have not pointed to anything specific showing otherwise, except for a few specific objections.

Defendants' objections include the time spent soliciting and hiring local counsel, excessive on emails for non-core administrative matters, on non-core work by all attorneys and clerical staff, and on ordinary office activities. Attorney Troy spent around 4 to 5 hours to retain local counsel, including meeting with potential local counsel and drafting a co-counsel agreement, and Paralegal Huang around a half-hour. The court views this time to be within reason and of the type of "discrete work that was both useful and a type ordinarily necessary to advance the . . . litigation to the stage it reached." *Hutchinson ex rel. Julien v. Patrick*, 636 F.3d 1, 15 (1st Cir. 2011). With respect to excessive time for emails for non-core administrative matters and non-core work by all attorneys and clerical staff, which Defendants do not discuss specifically, again the court generally finds that the distribution of work among senior attorneys, less senior attorneys, and paralegals to have been reasonable, and the time spent on any particular task not excessive.

Other specific time-keeping items are raised in Defendants' counsel's affidavit, each of which the court will address. First, Attorney Merrigan's affidavit points out that there are entries designed for "an unknown items referred to as 'IPTC.'" (Merrigan Aff. ¶ 6, Dkt. No. 188-4.) Matching up the time-keeping entry ("01-04-17 IPTC") with the docket, IPTC appears to refer to the scheduling conference (perhaps standing for "Initial Pre-Trial Conference").

Defense counsel also points out that there are hourly charges for downloading ECF documents. The court notes all such entries (with the description "Access, Download, and Review Doc. [#]") were performed by one of the two paralegals for 0.08 hours (which amounts to $12) per document. Keeping up-to-date on the docket is an important part of effective case management and in this case was appropriately performed by a non-attorney. However, recognizing that the task is particularly rudimentary, the court will reduce the hourly rate by half for accessing, downloading,

and reviewing ECF documents. Defendants did not provide a breakdown of these items, but by the court's calculation, the reduction is 7.08 of total paralegal time.

In addition, defense counsel takes issue with time-keeping items for setting up WeChat and other modes of communication. Without the benefit of any breakdown from Defendants, the court deems this to be 2 hours, time which the court will disallow. Similarly, the court will disallow time for pro hac vice motions and ECF registrations, which appear to total 2.08 hours for Attorney Troy, 2.32 hours for Attorney Schweitzer, 0.72 hours for Attorney Indelicato, and 0.66 hours for Attorney Byun.

Defendants and Attorney Merrigan also raise the issue of hourly charges relating to the unsuccessful opt-in claims of Tobden, Tulku, and Gyatso, and entries in connection with newspaper publications to the putative collective class, despite the fact that plaintiff never published a notice to putative collective class members. The claims on behalf of Tobden, Tulku, and Gyatso were barred by the statute of limitations. Equitable tolling arguments were ultimately unsuccessful.  Opt-in forms filed by Plaintiff were incomplete and illegible. (Dkt. Nos. 24-27.) And Plaintiff acknowledges he never disseminated a notice to putative collective class members. (Pl.'s Reply 10, Dkt. No. 189.) In light of these facts, the court will disallow related time, which Defendants have identified in Exhibit F. (D.'s Opp. Ex. F, Dkt. No. 188-6); *see Killeen v. Westban Hotel Venture, LP*, 872 N.E.2d 731, 739 (Mass. App. 2007) ("[N]o fee should be awarded for services employed pursuing an unsuccessful claim, unless the court finds that the unsuccessful claims are sufficiently interconnected with the claims on which the plaintiff prevails." (internal quotation marks omitted) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983); *Peckham v. Continental Cas. Ins. Co.*, 895 F.2d 830, 842 (1st Cir. 1990))). Specifically, 50.18 hours for Attorney Troy, 5.46 hours for Attorney Schweitzer, 2 hours for Attorney Byun, 1.41 hours for Attorney Indelicato,  and 1.66 hours of paralegal time will be discounted. The court, however, declines to additionally credit the fees incurred by Defendants for

this and other "unproductive litigation." (Merrigan Aff. ¶¶ 7–8, Dkt. No. 188-4; D.'s Opp. 10, Dkt. No. 188.)

Finally, the court agrees that Plaintiff's counsel more than once appeared to disregard meet and confer obligations, filing deadlines, and directions in procedural orders. In addition, they were unprepared to provide a qualified trial interpreter and failed to keep the court informed of the situation. But the court declines to reduce fees based on these issues.

3. *Inaccurate Time-Keeping Entries*

Defendants assert that four of Attorney Troy's invoice time entries regarding telephone calls with opposing counsel, Attorney Thomas Merrigan, are exaggerated. As support, Attorney Merrigan submitted an affidavit, which declares: "At most, I have had two telephone conversations with attorney Troy, neither of which lasted more than a couple of minutes." The court has no way of determining for certain whose representation is correct. However, the court agrees with Plaintiff that Attorney Merrigan's mere assertion of his recollection, unaccompanied by contemporaneous time-keeping records, is not enough to persuade the court to discount Attorney Troy's detailed, contemporaneously made time entries.

4. *Contingency Fee Agreement*

Defendants briefly argue that the court should consider the fact the Troy Law firm has a contingent fee arrangement with Plaintiff that will compensate the firm at 35% rate. However, it is improper for the court to base the award of fees on a contingency agreement rather than the lodestar method. *Hyannis Anglers Club, Inc. v. Harris Warren Commercial Kitchens, LLC*, 78 N.E.3d 784, 792 (Mass. App. Ct. 2017); *Juan Juan Chen*, 2016 WL 4729307, at *4; *Davis v. Footbridge Eng'g Servs., LLC*, 09-cv-11133-NG, 2011 WL 3678928, at *3 (D. Mass. Aug. 22, 2011) ("A court may not ignore the lodestar approach in favor of a contingency-fee arrangement when determining an appropriate award of fees under FLSA." (quoting *Walker v. Dovetails, Inc.*, No. 3:10cv526, 2010 WL 5878336

(E.D. Va. Nov. 30, 2010))).

     C.    Total Fees

In summary, Attorney Troy's time will be reduced by 64.135 hours, resulting in a total of 82.705 hours; Attorney Schweitzer by 31.57 hours, to 178.2 hours; Attorney Byun by 2.66 hours, to 32.77 hours; Attorney Indelicato by 2.13 hours, to 22.71 hours; and the paralegals' time by 10.74 hours, to 41.61 hours. The hourly rates are: $400 for Attorney Troy; $225 for Attorneys Schweitzer and Byun; $150 for Attorney Indelicato;. $100 for Paralegals Huang and Kilaru; $400 for Rebecca Pontikes; and $195 for Bryn Sfetsios. The corresponding fees are $33,082 for Attorney Troy; $40,095 for Attorney Schweitzer; $6,774.75 for Attorney Byun; $3,087 for Attorney Indelicato; $11,400 for Attorney Pontikes; $429 for Attorney Sfetsios; and $3,087 for Paralegals Huang and Milaru. The court will award fees totaling $97,954.75, instead of the $190,453 proposed by Plaintiff.

## IV. Costs

A prevailing plaintiff "shall also be awarded the costs of the litigation." Mass. Gen. Laws ch. 149, § 150. Plaintiff seeks $9,564.91 in costs for court fees, process servers, copying, postage, deposition transcripts, interpreter fees, and travel expenses. Defendants argue that the Tibetan interpreter hired by Plaintiff's counsel for Defendant Lama's deposition was found by the court to be unqualified and consequently the deposition testimony unusable. (Elec. Order, Dkt. No. 142.) In his affidavit, defense counsel objects to Plaintiff's recovering costs relating to the purchase of this deposition transcript. The court agrees, in addition to any fees for this interpreter. However, the court is unable to determine what that cost was and whether it was included in Plaintiff's calculation of costs. Additionally, although Plaintiff's proposes costs are $9,564.91, the only detailed expenses amount to $8,285.94 in the Troy Invoice. (Expense Descriptions, Dkt. No. 183-1.) The expenses listed in the Pontikes Invoice is significantly lacking in detail. (Expense, Dkt. No. 183-2.) Accordingly, the court will awards Plaintiff costs of $8,285.94.

## V. Conclusion

For the reasons set forth above, Plaintiff's motion for determination of damages, fees, and costs (Dkt. No. 182) is GRANTED-IN-PART. Plaintiff is awarded $181,426.37 in damages, $97,954.74 in attorneys' fees, and $8,285.94 in costs. The clerk shall enter judgment for Plaintiff.

It is So Ordered.


   /s/ Mark G. Mastroianni    
MARK G. MASTROIANNI
United States District Judge